UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x   Docket No.: 12-CV-2149 (CBA)
SHERRY GRANT,                                                                              (VMS)

                      Plaintiff,                                              **SECOND AMENDED**
                                         **COMPLAINT**

       -against-

UNITED FEDERATION OF TEACHERS and UNITED
CEREBRAL PALSY OF NEW YORK CITY, INC.,          **DEMAND FOR JURY**
                                           **TRIAL**

                 Defendants.
-------------------------------------------------------------------x

      Plaintiff SHERRY GRANT, by her attorneys Precious C. Aneji, Esq. and Kathy A.

Polias, Attorney-at-Law, complaining of the Defendants UNITED FEDERATION OF

TEACHERS, and UNITED CEREBRAL PALSY OF NEW YORK CITY, INC., , upon

information and belief, alleges as follows: -- dahlia – about 2 or 3 weeks to a one month

## NATURE OF ACTION

1.      This action is brought to remedy:

(a)     Defendant United Federation of Teachers' (hereinafter also "UFT") breach of its

        duty of fair representation, in violation of the National Labor Relations Act

        ("NLRA"), 29 U.S.C. §§ 151 et seq.;

(b)     Defendant United Cerebral Palsy of New York City, Inc.'s (hereinafter also

        "UCP") breach of the Collective Bargaining Agreement between UCP and UFT,

        of which Plaintiff is a beneficiary, in violation of Section 301 of the Labor

        Management Relations Act ("LMRA"), 29 U.S.C. § 185;

(c)     Defendant United Federation of Teachers' retaliation against Plaintiff – in

        violation of the New York State Executive Law, Section 296, et al. ("New York

State Human Rights Law") and the New York City Administrative Code, Section 8, et al. ("New York City Human Rights Law") – for making complaints against UCP of sex discrimination and of retaliation for engaging in protected activity; and

(d)    Defendant United Cerebral Palsy of New York City, Inc.'s retaliation against Plaintiff – in violation of the New York State Executive Law, Section 296, et al. ("New York State Human Rights Law") and the New York City Administrative Code, Section 8, et al. ("New York City Human Rights Law") – for making complaints against UCP of sex discrimination and of retaliation for engaging in protected activity.

## JURISDICTION AND VENUE

2.    Jurisdiction is specifically conferred upon this Court by the Labor Management Relations Act and the National Labor Relations Act.  This Court has pendent and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims.

3.    Venue is proper because the incidents complained of in this lawsuit occurred in the Eastern District of New York and duly authorized officers or agents of the United Federation of Teachers are engaged in representing or acting for employee members in the Eastern District of New York.

## PARTIES

4.    During all times relevant and material to this Complaint, Plaintiff Sherry Grant was a member of the labor organization United Federation of Teachers within the meaning of the

National Labor Relations Act and an employee of United Cerebral Palsy of New York City, Inc.
within the meaning of the Labor Management Relations Act.

5.     During all times relevant and material to this Complaint, Defendant United
Federation of Teachers was a "labor organization" within the meaning of the National Labor
Relations Act, the New York State Human Rights Law, and the New York City Human Rights
Law and maintained its principal place of business at 52 Broadway, New York, NY 10004.

6.     During all times relevant and material to this Complaint, Defendant United
Cerebral Palsy of New York, Inc. was an "employer" within the meaning of the Labor
Management Relations Act, the New York State Human Rights Law, and the New York City
Human Rights Law and maintained its principal place of business at 80 Maiden Lane, New
York, NY 10038.

7.     During all times relevant and material to this Complaint, Plaintiff was the
beneficiary of a Collective Bargaining Agreement between United Federation of Teachers and
United Cerebral Palsy of New York City, Inc., in effect from December 30, 2009 to June 29,
2012, annexed hereto.

## FACTUAL ALLEGATIONS

8.     Plaintiff Sherry Grant worked as a Residence Program Specialist with Defendant
United Cerebral Palsy of New York City, Inc. (hereinafter also "UCP") from 2000 to 2011.  She
was a member of the labor organization, United Federation of Teachers, for several years and
was covered by the Collective Bargaining Agreement in effect from December 30, 2009 to June
29, 2012 between UCP and UFT acting on behalf of Plaintiff and other employees of UCP.  A
copy of the Collective Bargaining Agreement is annexed hereto.

9.     Plaintiff has had a pending lawsuit against UCP in the United States District

Court, Southern District of New York, since January 2011, in which she asserts claims against UCP of sex discrimination and retaliation for complaining about sex discrimination and for complaining about retaliation for engaging in protected activity. That lawsuit is Sherry Grant v. United Cerebral Palsy of New York City, Inc., et al., 11-CV-0018. Prior to bringing that lawsuit, she had made complaints against UCP to the New York State Division of Human Rights and the U.S. Equal Employment Opportunity Commission of sex discrimination and retaliation for complaining about sex discrimination. She had also complained about sex discrimination to managerial staff at UCP.

10.    In October 2011, Plaintiff was questioned by UCP on false allegations that she was heard saying that a consumer should burn to death. Upon information and belief, two of her co-workers at UCP's Landings unit/site in Brooklyn were also the target of allegations concerning the same consumer. However, UCP treated Plaintiff much differently than the other two employees against whom allegations were made. Upon information and belief, UCP allowed the two other employees to work while the investigations into the allegations against them were pending but sent Plaintiff home to wait for the outcome of the investigation. Plaintiff was home for at least two weeks. UCP's requiring Plaintiff to stay home pending the outcome of an investigation while upon information and belief not requiring her two co-workers to do so was an adverse action in further retaliation for Plaintiff's complaints of sex discrimination and of retaliation for engaging in protected activity. Requiring Plaintiff to stay home while upon information and belief not requiring her two co-workers to do so made it appear as though Plaintiff was guilty of the allegations concerning the consumer.

11.    In or about late October/early November 2011, UCP informed Plaintiff that the allegations against her had been determined to be unfounded, but instead of allowing Plaintiff to

return to work at the Landings unit/site, UCP transferred her to another site -- the E. 51st Street site in Brooklyn -- where she was scheduled for ten hours less, and therefore paid less, than at the Landings site. Everett Watts, the Residential Director at the Landings site/unit, was involved in making this transfer. The two co-workers whom upon information and belief had been the target of allegations concerning the same consumer were not transferred from the Landings site and did not sustain a reduction in hours and wages as Plaintiff did. The fact that the transfer occurred right after allegations against Plaintiff had been investigated by UCP made it appear as though Plaintiff had done something wrong and was being punished for that, when UCP admitted that the allegations were unfounded. UCP's adverse transfer of Plaintiff to the E. 51st Street site was yet another retaliatory action against Plaintiff for complaining about sex discrimination and for complaining about retaliation for engaging in protected activity.

12. As indicated above, Plaintiff complained of sex discrimination and retaliation for engaging in protected activity in the case Sherry Grant v. United Cerebral Palsy of New York City, Inc., et al., 11-CV-0018. Defendant UCP took the adverse actions of requiring Plaintiff to stay home pending the outcome of the investigation into the allegations against her and of transferring her to the E. 51st Street site from the Landings, less than one month following the Initial Conference in the Southern District of New York case, at which Plaintiff appeared through counsel, and less than one month following the start of discovery in that case. These adverse actions occurred against a background of Defendant UCP subjecting Plaintiff to many retaliatory actions for complaining about sex discrimination and retaliation. These other retaliatory actions included but were not limited to: giving Plaintiff many baseless write-ups and disciplinary actions; disciplining Plaintiff for things for which her co-workers were not disciplined; disregarding Plaintiff's application in 2010 for an open Residence Program

5

Specialist position that carried more hours and then giving the position to an individual who was less qualified than Plaintiff; and documenting certain actions taken by Plaintiff in Plaintiff's file as wrongdoings while not documenting the same actions taken by Plaintiff's co-workers as wrongdoings in their files.

13.    Defendant UCP breached several provisions of the Collective Bargaining Agreement by making this transfer of Plaintiff.  By reducing Plaintiff's hours from the number of hours she worked at the Landings site even though there was not a lack of work and even though less senior employees' hours were not reduced, Defendants UCP and Everett Watts violated Section A(1) of Article 25 (Hours of Work) of the Collective Bargaining Agreement.  Defendant UCP breached Section D of Article 27 (Vacancies, Transfers, Promotions, Layoffs, and Recalls) of the Collective Bargaining Agreement by transferring Plaintiff from the Landings site to the E. 51st St. site, without any basis for disciplining Plaintiff, against Plaintiff's will, without Plaintiff's consent, and ahead of less senior employees.  Defendant UCP breached Section B of Article 28 (Due Process) of the Collective Bargaining Agreement by transferring Plaintiff from the Landings site to the E. 51st Street site without just cause, against her will, and without her consent.

14.    On or about November 3, 2011, Plaintiff asked Defendant United Federation of Teachers to file a grievance on her behalf regarding the transfer from the Landings site to the E. 51st Street site.  Defendant UFT was aware that the allegations against Plaintiff concerning the consumer had been determined to be unfounded, that UCP had no just cause for transferring Plaintiff out of the Landings, that Plaintiff was transferred ahead of less senior employees, that the transfer resulted in a reduction in her wages, that Plaintiff was transferred against her will and without her consent, that UCP breached the Collective Bargaining Agreement by

transferring Plaintiff, and that UCP was further retaliating against Plaintiff for her protected

activity by effectuating the transfer. Yet, despite all of this, UFT indicated an unwillingness to

file a grievance. Upon Plaintiff's information and belief, UFT had filed grievances for other

union members on issues that were less grave and serious and that had less of an impact on those

members. Given the circumstances, the union's decision was so far outside a wide range of

reasonableness that it was irrational. Upon information and belief, UFT was aware that Plaintiff

had instituted and was prosecuting a discrimination and retaliation lawsuit against UCP and that

Plaintiff had previously filed a discrimination and retaliation complaint against UCP with the

New York State Division of Human Rights and the U.S. Equal Employment Opportunity

Commission. For example, Plaintiff had discussed her State Division of Human Rights

complaint against UCP with her UFT Chapter Leader Thara Boucicault and upon information

and belief, UCP employees told UFT employees and agents of Plaintiff's lawsuit against UCP.

15.     Plaintiff was summoned to a meeting to take place on or about November 16,

2011 with UFT and UCP. Plaintiff's UFT Chapter Leader Thara Boucicault told her prior to the

meeting that the meeting was to confirm her schedule at the E. 51st Street site and to give her

back the hours she had lost. When Plaintiff arrived at the meeting, she found Everett Watts,

(Residential Director of the Landings site/unit) and Patricia Traynor (Coordinator of Operations

at UCP) acting on behalf of UCP, Thara Boucicault, and UFT employee Olivia Wint. Plaintiff

was surprised by the appearance of Ms. Wint and had not been informed by anyone prior to the

meeting that Ms. Wint was going to be there. Ms. Wint told Plaintiff that UCP had asked her to

intervene, thereby revealing that her purpose there was to advocate for UCP, instead of for

Plaintiff as she was required to do. UCP apparently wanted a union representative present who

would be more amenable to it and who would comply with its wishes and goals. UFT apparently

granted UCP's request by having Ms. Wint attend the meeting. Plaintiff had had no significant interaction with Ms. Wint for more than two years prior to that meeting, so her appearance at the meeting was really an aberration.

16.     Ms. Wint took over the "representation" of Plaintiff at the meeting, but in fact failed to represent Plaintiff at the meeting. Instead, she acted in a way that was contrary to Plaintiff's interests, supportive of UCP's interests, and facilitative of yet another retaliatory and adverse action by UCP against Plaintiff. Ms. Wint overtly sided with and defended UCP. Ms. Wint told Plaintiff that UCP wanted to transfer her yet again to a different site/unit/assignment and that Plaintiff had to take one of the two transfer options that UCP was offering or stay home without pay. Both transfer options would have inflicted undue hardship on Plaintiff and were adverse to Plaintiff and Ms. Wint was aware of that. One transfer option was to Staten Island, which was far away from Plaintiff's home. The other transfer option was to another site in Brooklyn, where the schedule would have inflicted undue hardship on Plaintiff who had a young baby at home and where, upon information and belief, the workload was exceptionally grueling. Thara Boucicault in fact asked at the meeting why they were all trying to send Plaintiff to another borough and sent a text to Plaintiff during the meeting not to take the assignment in Brooklyn, as the work there was exceptionally grueling. Ms. Wint told Plaintiff that she had to decide right then and there whether to take one of these two adverse transfer options. Ms. Wint knew that UCP's transfer of Plaintiff out of the Landings to the E. 51st Street site had violated the CBA, was adverse to Plaintiff, and was another retaliatory action by UCP against Plaintiff for her protected activity. Yet, she did not even question or challenge UCP on the transfer and in fact tried to facilitate yet another transfer by UCP that she knew violated the contract, was adverse to Plaintiff, and was a retaliatory action. Patricia Traynor made the baseless allegation

that the consumers at the E. 51st Street site did not like Plaintiff and that they had made complaints about Plaintiff from her first day there.  Ms. Wint did not ask Ms. Traynor to support her allegation or even question her allegation.  Patricia Traynor and Everett Watts also falsely represented that they had no other placement options in Brooklyn, which Ms. Wint also did not question or challenge.  Instead, Ms. Wint kept angrily repeating that Plaintiff had to take one of the two aforementioned adverse transfer options or stay home without pay.  Ms. Wint defended and sided with UCP at the meeting, instead of defending Plaintiff as Ms. Wint was required to do.  Ms. Wint's actions were arbitrary, discriminatory, capricious, and in bad faith and were facilitative of UCP's retaliation against Plaintiff for engaging in the protected activity of protesting sex discrimination and protesting retaliation for complaining about sex discrimination, as well as facilitative of UCP's violations of the CBA.  Ms. Wint and UFT actually undermined Plaintiff's interests at the meeting and thereby treated Plaintiff differently than they had treated other union members.  Ms. Wint and UFT took these actions as Plaintiff was prosecuting her discrimination and retaliation lawsuit against UCP.

18.     By attempting to again transfer Plaintiff, Defendant UCP breached the same provisions of the Collective Bargaining Agreement as it had breached when it had transferred Plaintiff from the Landings site to the E. 51st Street site.

19.     After the meeting, Plaintiff repeatedly contacted UFT, or more specifically UFT Representative Ilene Weinerman, about what occurred at the meeting.  UFT indicated an unwillingness to grieve UCP's adverse transfer of Plaintiff from the Landings to E. 51st Street or UCP's efforts to again adversely transfer Plaintiff.  UFT also represented to Plaintiff that Plaintiff had no choice but to take a position that was not comparable to the one in the Landings in the terms and conditions of employment if she wanted to return to work, even though the

9

transfer of Plaintiff from the Landings was unjustifiable and upon information and belief, comparable positions were available.  UFT was aware that UCP was violating the Collective Bargaining Agreement, that the transfers were adverse to Plaintiff, and that UCP was retaliating against Plaintiff for her protected activity.  UFT maliciously sided with UCP and failed to fairly represent Plaintiff.  UFT acted arbitrarily, discriminatorily, capriciously, and in bad faith, and actually participated in and actively facilitated UCP's violations of the CBA, UCP's adverse actions against Plaintiff, UCP's retaliation toward Plaintiff for her protected activity.  UFT took these actions as Plaintiff was conducting discovery in and prosecuting her lawsuit against UCP in the Southern District of New York.

20.    UFT purportedly filed a grievance in the middle of December 2011 regarding the removal of Plaintiff from the Landings site and the placement of her on an unpaid leave of absence following an unsubstantiated allegation of consumer abuse.  However, the filing of this grievance was only for show and UFT did not intend to effectively and fairly represent Plaintiff on the grievance.  UFT's acts and omissions both before and after the purported grievance made this evident.  As explained above, for a significant period of time directly preceding the purported filing of the grievance in the middle of December 2011, the union undermined Plaintiff's interests, sided with UCP, and indicated an unwillingness to file a grievance.  Under Article 29 of the Collective Bargaining Agreement, the union was to file the grievance within ten days after the facts giving rise to the grievance were known or reasonably known to Plaintiff. The grievance was purportedly filed more than a month after Plaintiff first contacted UFT about filing a grievance and the facts giving rise to the grievance were known to Plaintiff.  Then, upon information and belief, UFT failed to make reasonable efforts to expeditiously schedule a Step One meeting on the grievance, as a Step One meeting was not held until early April 2012, which

was almost four months after the grievance was purportedly filed and after Plaintiff had already

been home without pay for almost five months.  A space of almost four months between the

purported submission of a grievance in the middle of December 2011 and a Step One meeting in

the beginning of April 2012 was a grossly unreasonable delay.  Under Article 29 of the

Collective Bargaining Agreement, the Step One meeting was to be held within ten days of the

submission of the grievance.  UFT exercised this delay as Plaintiff was conducting discovery in

the Southern District of New York lawsuit, filing and briefing a motion to amend the complaint

in that case to add claims and to add Everett Watts and other UCP supervisors as Defendants in

that case, and otherwise prosecuting that case.

      21.    Plaintiff, Olivia Wint, Thara Boucicault, and UCP's representatives attended the

Step One meeting.  UFT did not even discuss the substance of the purported grievance at the

meeting or the ways in which UCP had violated the Collective Bargaining Agreement.  The

grievance was not actually prosecuted at the meeting and UFT did not even try to advocate for

Plaintiff to be reinstated to the Landings.  Plaintiff was offered a few options for placement by

UCP, all for fewer hours than she had worked at the Landings.  In an effort to mitigate her

damages, Plaintiff tried to accept one of the placements.  UFT presented her with an agreement

among Plaintiff, UFT, and UCP that among other things, contained statements aimed at

protecting UFT from any liability.  The agreement contained the statement, "Ms. Grant agrees

that she has been fully and fairly represented by the UFT with respect to the negotiation and

execution of this Agreement."  UFT was supposed to be acting as Plaintiff's representative and

in Plaintiff's interests and yet it was imposing a clause aimed at protecting itself in the path to

Plaintiff returning to work.  UFT was making Plaintiff's return to work conditioned on not

holding the UFT liable for anything.  It was a violation of the union's duty to fair representation

to make Plaintiff's return to work conditioned on Plaintiff waiving her right to hold UFT liable for its actions and omissions. In addition, UFT actually placed this clause in a contract in which the employer UCP was supposed to be the adversary and UFT was supposed to be acting on behalf of Plaintiff. UFT represented that if Plaintiff wanted the placement, she had to sign the agreement as is. Plaintiff could not and did not sign the agreement as is and therefore was precluded from returning to work. UFT put Plaintiff in the unfair and unjust position of having to waive her right to hold UFT liable for its actions and omissions in order to return to work.

22.    In addition, Section C (1) of Article 29 (Grievance and Arbitration Procedure) of the Collective Bargaining Agreement stated with regard to Step Two of the grievance process: "The answer of the Executive Director or designee shall be given in writing to the Union within ten days after the meeting and shall set forth the reason if the grievance is denied." Plaintiff discovered on May 30, 2012 during a deposition of Alan Seiler, who was the Director of Human Resources at UCP for many years up until early 2012 and UCP's designee at Step Two, that he never put his reasons in writing for denying grievances of disciplinary actions and that UFT did not complain about or challenge his failure to do that even though his failure to do so was a violation of the CBA. UFT could have challenged this violation of the contract and tried to enforce the contract through the grievance procedure but chose not to. Mr. Seiler testified that when denying a grievance of a disciplinary action, he would only orally state at the Step Two meeting that the disciplinary action was substantiated and that the grievance was denied. Upon information and belief, he did not explain either orally or in writing how he would reach that conclusion. Mr. Seiler had denied grievances filed by UFT on behalf of Plaintiff. The union's failure to require that Mr. Seiler put his reasons in writing and to thereby enforce the Collective Bargaining Agreement would have negatively affected and prejudiced Plaintiff in the grievance

process in two ways.

23.     Firstly, UFT's failure to enforce the contract and require that Mr. Seiler justify and substantiate his negative decisions in writing allowed Mr. Seiler and UCP in general to act with little accountability and made it very easy for Mr. Seiler to deny grievances for no legitimate reason.  There was virtually no paper trail of the happenings at the Step Two meeting. The proceedings at the Step Two meetings were not recorded or transcribed and Mr. Seiler did not put his reasons in writing for denying grievances as he was required to do under the CBA. UFT failed to take notice of the fact that Mr. Seiler was hardly a disinterested decision-maker, as he was deciding grievances filed against his own employer.

24.     Secondly, UFT''s failure to enforce the contract and require that Mr. Seiler justify and substantiate his negative decisions in writing inhibited UFT from being able to fairly and properly evaluate whether to take grievances denied by Mr. Seiler to arbitration.  Upon information and belief, the UFT employees/agents involved in making the decisions about whether to take grievances to arbitration, who included individuals who were not present at the Step Two meeting, would give weight to Mr. Seiler's decision without knowing or caring to know the reasons or rationales for his decision.  As mentioned above, Mr. Seiler's reasons or rationales were particularly important because he could not be considered a disinterested or impartial decision-maker.  UFT had in fact refused to take grievances concerning Plaintiff to arbitration after negative decisions by Mr. Seiler at Step Two that he did not explain.  These grievances included:  a grievance filed in July 2009 regarding UCP's adverse transfer of Plaintiff from one residence in the Landings site/unit to another which UFT informed Plaintiff in May 2011 it would not take to arbitration; a grievance filed in March 2010 regarding a final written warning issued by UCP to Plaintiff of insubordination which UFT informed Plaintiff in August

2011 it would not take to arbitration; upon information and belief, a grievance filed in March

2010 regarding a second written warning issued to Plaintiff by UCP of misconduct; and upon

information and belief, a grievance filed in December 2009 regarding a first written warning

issued by UCP to Plaintiff of insubordination and misconduct.  The adverse transfer of Plaintiff

from one residence in the Landings to another and the aforementioned disciplinary actions were

unwarranted and unjustified and were perpetrated by UCP in retaliation for Plaintiff's protected

activity.

25.     In addition to sustaining lost wages and benefits as a result of UFT's and UCP's

actions and omissions, Plaintiff suffered severe emotional and mental distress.

### AS FOR A FIRST CAUSE OF ACTION

26.     Plaintiff repeats and realleges paragraphs 1 through 25 as if each paragraph is

repeated verbatim herein.

27.     In violation of the National Labor Relations Act, Defendant United Federation of

Teachers breached its duty to Plaintiff of fair representation with regard to UCP's adverse and

retaliatory transfer of Plaintiff from the Landings to the E. 51st Street site and with regard to

UCP's efforts to institute yet another adverse and retaliatory transfer of Plaintiff.  Defendant

UFT acted in a manner toward Plaintiff that was arbitrary, discriminatory, capricious, and/or in

bad faith.  UFT's acts and omissions included but were not limited to:  (1) UFT conveying an

unwillingness to file, and failing to file, a grievance for a significant period of time regarding the

transfers/attempted transfers of Plaintiff (which UFT knew were retaliatory, adverse, and

violations of the CBA) while having filed grievances on behalf of members for matters that were

less grave and serious; (2) UFT overtly siding with UCP, representing UCP's interests rather

than Plaintiff's interests, and trying to facilitate yet another retaliatory and adverse transfer of

Plaintiff at the November 11, 2011 meeting as well as after the November 11th meeting; (3) UFT prosecuting a grievance that it purportedly filed in December 2011 in a non-expeditious manner; (4) UFT again siding with UCP and failing to represent Plaintiff at the April 2012 Step One meeting by failing to discuss the substance of the purported grievance or how UCP violated the CBA and by failing to urge the return of Plaintiff to the Landings or the placement of her in a comparable assignment; and (5) UFT conditioning Plaintiff's return to work in April 2012 on her agreeing not to hold UFT liable for anything.  Defendant's actions and omissions resulted in Plaintiff being out of work.

## AND AS FOR A SECOND CAUSE OF ACTION

28.     Plaintiff repeats and realleges paragraphs 1 through 27 as if each paragraph is repeated verbatim herein.

29.     In violation of the National Labor Relations Act, Defendant United Federation of Teachers breached its duty to Plaintiff of fair representation by not mandating that UCP's designee at Step Two put in writing or explain his reasons for denying grievances filed regarding UCP's adverse transfer of Plaintiff from one residence in the Landings to another in 2009 and for giving Plaintiff disciplinary actions in 2009 and 2010.  UFT's failure to enforce the contract in this way prejudiced Plaintiff in the grievance process.

## AND AS FOR A THIRD CAUSE OF ACTION

30.     Plaintiff repeats and realleges paragraphs 1 through 29 as if each paragraph is repeated verbatim herein.

31.     In violation of the Labor Management Relations Act, Defendant United Cerebral Palsy of New York City, Inc. breached Section A(1) of Article 25 (Hours of Work) of the Collective Bargaining Agreement between UFT and UCP, of which Plaintiff was a beneficiary,

by reducing Plaintiff's hours from the number of hours she worked at the Landings even though there was not a lack of work and even though less senior employees' hours were not reduced.

## AND AS FOR A FOURTH CAUSE OF ACTION

32.     Plaintiff repeats and realleges paragraphs 1 through 31 as if each paragraph is repeated verbatim herein.

33.     In violation of the Labor Management Relations Act, Defendant United Cerebral Palsy of New York City, Inc. breached Section D of Article 27 (Vacancies, Transfers, Promotions, Layoffs, and Recalls) of the Collective Bargaining Agreement between UFT and UCP, of which Plaintiff was a beneficiary, by: (a) arbitrarily, maliciously, and adversely transferring Plaintiff from the Landings site to the E. 51st Street site; (b) without any basis for disciplining Plaintiff, transferring her from the Landings site to the E. 51st Street site, against her will, without her consent, and ahead of less senior employees; and (c) not informing Plaintiff of the reason for the transfer from the Landings site to the E. 51st Street site.

## AND AS FOR A FIFTH CAUSE OF ACTION

34.     Plaintiff repeats and realleges paragraphs 1 through 33 as if each paragraph is repeated verbatim herein.

35.     In violation of the Labor Management Relations Act, Defendant UCP breached Section D of Article 27 (Vacancies, Transfers, Promotions, Layoffs, and Recalls) of the Collective Bargaining Agreement between UFT and UCP, of which Plaintiff was a beneficiary, by: (a) arbitrarily, adversely, and maliciously trying to transfer Plaintiff from the E. 51st Street site to yet another site; and (b) without any basis for disciplining Plaintiff, trying to transfer her from the E. 51st Street site to yet another site, against her will, without her consent, and ahead of less senior employees.

16

## AND AS FOR A SIXTH CAUSE OF ACTION

36.     Plaintiff repeats and realleges paragraphs 1 through 35 as if each paragraph is repeated verbatim herein.

37.     In violation of the Labor Management Relations Act, Defendant UCP breached Section B of Article 28 (Due Process) of the Collective Bargaining Agreement between UFT and UCP, of which Plaintiff was a beneficiary, by taking the following adverse actions against Plaintiff without just cause:  transferring her from the Landings site to the E. 51st Street site against her will and without her consent; and reducing her hours from the number of hours she was working at the Landings site.

## AND AS FOR A SEVENTH CAUSE OF ACTION

38.     Plaintiff repeats and realleges paragraphs 1 through 37 as if each paragraph is repeated verbatim herein.

39.     In violation of the Labor Management Relations Act, Defendant UCP breached Section B of Article 28 (Due Process) of the Collective Bargaining Agreement between UFT and UCP by after Plaintiff was at the E. 51st Street site for a short time, mandating that she stay home without pay or take one of two other assignments, both of which would cause undue hardship to her and be adverse to her.

## AND AS FOR AN EIGHTH CAUSE OF ACTION

40.     Plaintiff repeats and realleges paragraphs 1 through 39 as if each paragraph is repeated verbatim herein.

41.     In violation of New York State Executive Law, Section 296 (New York State Human Rights Law), Defendant UFT retaliated against Plaintiff for her complaints against UCP of sex discrimination and retaliation for engaging in protected activity.  Defendant UFT had

knowledge of these complaints and actively supported and facilitated retaliatory actions taken by UCP.

## AND AS FOR A NINTH CAUSE OF ACTION

42.     Plaintiff repeats and realleges paragraphs 1 through 41 as if each paragraph is repeated verbatim herein.

43.     In violation of New York City Administrative Code, Section 8, et seq., (New York City Human Rights Law), Defendant UFT retaliated against Plaintiff for her complaints against UCP of sex discrimination and retaliation for engaging in protected activity.  Defendant UFT had knowledge of these complaints and actively supported and facilitated retaliatory actions taken by UCP.

## AND AS FOR A TENTH CAUSE OF ACTION

44.     Plaintiff repeats and realleges paragraphs 1 through 43 as if each paragraph is repeated verbatim herein.

45.     In violation of New York State Executive Law, Section 296 (New York State Human Rights Law), Defendant UCP retaliated against Plaintiff for her complaints against UCP of sex discrimination and retaliation by taking the adverse actions against her of making her stay home during the investigation of allegations against her regarding a consumer while not making her two co-workers who were also the targets of complaints concerning the same consumer stay home, effectuating an adverse transfer of Plaintiff the Landings site to E. 51st Street site, and then attempting to effectuate another adverse transfer of Plaintiff from the E. 51st Street site.

## AND AS FOR AN ELEVENTH CAUSE OF ACTION

46.     Plaintiff repeats and realleges paragraphs 1 through 45 as if each paragraph is repeated verbatim herein.

47.     In violation of New York City Administrative Code, Section 8, et seq. (New York City Human Rights Law), Defendant UCP retaliated against Plaintiff for her complaints against UCP of sex discrimination and retaliation by taking the adverse actions against her of making her stay home during the investigation of allegations against her regarding a consumer while not making her two co-workers who were also the targets of complaints concerning the same consumer stay home, effectuating an adverse transfer of Plaintiff the Landings site to E. 51st Street site, and then attempting to effectuate another adverse transfer of Plaintiff from the E. 51st Street site.

**WHEREFORE, Plaintiff prays the court for judgment as follows:**

**Under the National Labor Relations Act against Defendant United Federation of Teachers for the First Cause of Action:**

i.      awarding Plaintiff back pay, front pay, and lost benefits (including retirement benefits) in an amount to be proven at trial and in accordance with proof;

ii.     awarding Plaintiff general and compensatory damages for emotional distress, pain and suffering, humiliation, and loss of dignity in an amount to be proven at trial and in accordance with proof;

iii.    awarding Plaintiff reasonable attorney's fees and the costs and disbursements of this action; and

iv.     awarding such further relief that Plaintiff may be shown entitled to and in accordance with proof.

**Under the National Labor Relations Act against Defendant United Federation of Teachers for the Second Cause of Action:**

i.      awarding Plaintiff general and compensatory damages for emotional distress, pain

and suffering, humiliation, and loss of dignity in an amount to be proven at trial and in accordance with proof ;

ii.     awarding Plaintiff reasonable attorney's fees and the costs and disbursements of this action; and

iii.    awarding such further relief that Plaintiff may be shown entitled to and in accordance with proof.

**Under the Labor Management Relations Act against Defendant United Cerebral Palsy of New York City, Inc. for each of the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action:**

i.      reinstatement of Plaintiff to her position at the Landings site or to a comparable assignment;

ii.     awarding Plaintiff back pay, front pay, and lost benefits (including retirement benefits) in an amount to be proven at trial and in accordance with proof;

iii.    awarding Plaintiff reasonable attorney's fees and the costs and disbursements of this action; and

iv.     awarding such further relief that Plaintiff may be shown entitled to and in accordance with proof.

**Under the New York State Executive Law, Sections 296, et seq. (New York State Human Rights Law) against Defendant United Federation of Teachers for the Eighth Cause of Action:**

i.      awarding Plaintiff back pay, front pay, and lost benefits (including retirement benefits) in an amount to be proven at trial and in accordance with proof;

ii.     awarding Plaintiff compensatory damages for emotional distress, pain and

20

suffering, humiliation, and loss of dignity in an amount to be proven at trial and in accordance with proof;

iii. awarding Plaintiff punitive damages in an amount to be proven at trial and in accordance with proof;

iv. awarding Plaintiff the costs and disbursements of this action; and

v. awarding such further relief that Plaintiff may be show entitled to and in accordance with proof.

**Under the New York City Administrative Code, Section 8, et seq. (New York City Human Rights Law) against Defendant United Federation of Teachers for the Ninth Cause of Action:**

i. awarding Plaintiff back pay, front pay, and lost benefits (including retirement benefits) in an amount to be proven at trial and in accordance with proof;

ii. awarding Plaintiff compensatory damages for emotional distress, pain and suffering, humiliation, and loss of dignity in an amount to be proven at trial and in accordance with proof;

iii. awarding Plaintiff punitive damages in an amount to be proven at trial and in accordance with proof;

iv. awarding Plaintiff reasonable attorney's fees and the costs and disbursements of this action; and

v. awarding such further relief that Plaintiff may be shown entitled to and in accordance with proof.

**Under the New York State Executive Law, Sections 296, et seq. (New York State Human Rights Law) against Defendant United Cerebral Palsy of New York City, Inc. for the Tenth**

21

**Cause of Action:**

 i.  awarding Plaintiff back pay, front pay, and lost benefits (including retirement benefits) in an amount to be proven at trial and in accordance with proof;

 ii.  awarding Plaintiff compensatory damages for emotional distress, pain and suffering, humiliation, and loss of dignity in an amount to be proven at trial and in accordance with proof;

 iii.  awarding Plaintiff punitive damages in an amount to be proven at trial and in accordance with proof;

 iv.  awarding Plaintiff the costs and disbursements of this action; and

 v.  awarding such further relief that Plaintiff may be show entitled to and in accordance with proof.

**Under the New York City Administrative Code, Section 8, et seq. (New York City Human Rights Law) against Defendant United Cerebral Palsy of New York City, Inc. for the Eleventh Cause of Action:**

 i.  awarding Plaintiff back pay, front pay, and lost benefits (including retirement benefits) in an amount to be proven at trial and in accordance with proof;

 iii.  awarding Plaintiff compensatory damages for emotional distress, pain and suffering, humiliation, and loss of dignity in an amount to be proven at trial and in accordance with proof;

 iii.  awarding Plaintiff punitive damages in an amount to be proven at trial and in accordance with proof;

 iv.  awarding Plaintiff reasonable attorney's fees and the costs and disbursements of

this action; and

v.    awarding such further relief that Plaintiff may be shown entitled to and in

accordance with proof.


Dated: Brooklyn, New York
       December 27, 2012

                                    By:    /s/ /b/ Kathy A. Polias, Esq.

                                           Precious C. Aneji, Esq.
                                           767 Franklin Avenue
                                           Brooklyn, NY 11238
                                           Tel. No.:  917-376-3018

                                           Kathy A. Polias
                                           Attorney-at-Law
                                           155 Water Street
                                           Brooklyn, NY 11201
                                           Tel. No.:  718-514-2062