UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

SHERRY GRANT,

                Plaintiff,

        -against-

UNITED FEDERATION OF TEACHERS and UNITED      **Index No:**
CEREBRAL PALSY OF NEW YORK CITY, INC.,        **12-CV-2149 (CBA) (VMS)**

               Defendants.

-----------------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF THE UNITED FEDERATION OF TEACHERS' MOTION TO DISMISS


RICHARD E. CASAGRANDE
Attorney for the United Federation of Teachers
52 Broadway, 9th Floor
New York, New York 10004
(212) 533-6300


ARIANA A. GAMBELLA
Of Counsel

# TABLE OF CONTENTS

**PAGE**

Preliminary Statement ................................................................. 1

Statement of Facts .................................................................... 2

Argument ............................................................................ 6

    Point I ........................................................................... 6

    Grant's Hybrid Claims Must Be Dismissed Because The Second Amended
    Complaint Fails To State A Claim To Relief That Is Plausible On Its Face ........... 6

        A. The Standard Of Review ............................................... 7

        B. Plaintiff Has Failed To State A Duty Of Fair Representation Claim
        Against the UFT That Is Plausible On Its Face ........................... 8

            i. Grant's allegations that the UFT conveyed an unwillingness to
            file, and failed to file, a grievance for a significant period of time
            regarding her transfers/attempted transfers fail to set forth a claim
            to relief that is plausible on its face .............................. 11

            ii. Grant's claim alleging that the UFT did not represent her interests
            is not plausible ............................................... 14

            iii. Grant's assertions that the UFT failed to prosecute her grievance
            in a non-expeditious manner fail to set forth a claim that is plausible
            on its face ................................................... 16

            iv. Grant has failed to allege a plausible claim that the UFT failed to
            properly represent her at the Step One grievance meeting ........... 17

            v. Grant's assertions concerning a written agreement, which she
            admittedly never signed, do not allege a DFR claim that is plausible
            on its face ................................................... 18

            vi. Grant's DFR claim fails because she has not plead facts that
            would allow this Court to draw a reasonable inference that the
            UFT is liable for her alleged injuries or damages .................. 19

C. This Court Need Not Reach The Issue Of Whether Plaintiff Alleged A Plausible Claim That UCP Breached The CBA Because Plaintiff Has Failed To Allege Facts Sufficient To Establish The UFT's Breach Of DFR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Point II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Grant's Claims Must Also Be Dismissed Because She Failed To Exhaust Her Administrative Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Point III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Grant's Claims Concerning the UFT's Purported Failure To Mandate That UCP's Step Two Designee Explain His Reasons For Denying Grievances Filed Between 2009 and 2010 Should Be Dismissed As Time-Barred And As Insufficient . . . . . . . . . . 23

Point IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

The Court Should Decline Jurisdiction Over Grant's Remaining State And City Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE**

*Air Line Pilots Ass'n Int'l v. O'Neill*,
499 U.S. 65 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*,
403 U.S. 274 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Angrisani v. Long Island R.R.*,
No. CV-01-8453, 2005 WL 1311798, (E.D.N.Y. June 1, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Armstrong v. Chrysler Corp.*,
972 F.Supp. 1085 (D.Mich. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Barr v. United Parcel Serv.*,
868 F.2d 36 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bellesfield v. RCA Comm., Inc.*,
675 F.Supp. 952 (D.N.J. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*,
227 F.3d 29 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

*Cespuglio v. Ward*,
No. 03 Civ 8603, 2004 WL 1088235, (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Clarke v. Commc'ns Workers of America*,
318 F.Supp.2d 48 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Clark Cty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Clayton v. UAW,*
451 U.S. 679 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cole v. Cent. Park Sys., Inc.,*
No. 09-CV-3185, 2010 WL 3747591, (E.D.N.Y. Sept. 20, 2010) . . . . . . . . . . . . . . . . . . . 26

*Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,*
34 F.3d 1148 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*DelCostello v. Int'l Bhd. of Teamsters,*
462 U.S. 151 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 21, 23

*DiFolco v. MSNBC Cable L.L.C.,*
622 F.3d 104 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25,*
426 F.3d 416 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Evangelista v. Inlandboatmen's Union of Pac.,*
777 F.2d 1390 (9th Cir.1985*)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gaines v. New York City Transit Auth.,*
528 F.Supp.2d 135 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 22

*Hands v. DaimlerChrysler Corp.,*
2005 WL 1828787, (D.Ohio July 29, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Harris v. Mills,*
572 F.3d 66 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Laramee v. Jewish Guild for the Blind,*
72 F.Supp.2d 357 (S.D.N.Y 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*Lopez v. Time, Inc.,*
No. 93 Civ. 5330, 1994 WL 88062, (S.D.N.Y. Mar. 14, 1994) . . . . . . . . . . . . . . . . . . . . 21

*Marquez v. Screen Actors Guild, Inc.,*
525 U.S. 33 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Mazza v. Dist. Council of New York, et al.*,
2007 WL 2668116, (E.D.N.Y. Sept. 5, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McKee v. Transco Prods., Inc.*,
874 F.2d 83 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Milne v. Navigant Consulting, Inc.*,
No. 08-8964, 2012 WL 3283454, (S.D.N.Y. Aug. 13, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mussafi v. Fishman*,
No. 12-2071, 2012 WL 5473874, (S.D.N.Y. Nov. 12, 2012) . . . . . . . . . . . . . . . . . . . 8, 9, 11, 24

*NLRB v. Local 282, Int'l Bhd. of Teamsters*,
740 F.2d 141 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Republic Steel v. Maddox*,
379 U.S. 650 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rodolico v. Unisys Corp.*,
96 F.Supp.2d 184 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *26*

*Saidin v. New York City Dept. of Educ.*,
498 F. Supp.2d 683 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Samuels v. Air Transport Local 504*,
992 F.2d 12 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*,
415 F.3d 279 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Skluth v. United Merchants and Mfrs. Inc.*,
163 A.D.2d 104 (1st Dept. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Smith v. Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Spellacy v. Air Line Pilots Ass'n, Int'l*,
156 F.3d 120 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Strassberg v. N.Y. Hotel & Motel Trades Council*,
31 F. App'x. 15 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Tand v. Solomon Schechter Day Sch. of Nassau County*,
324 F.Supp.2d 379 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Taylor v. New York City Dept. of Educ.*,
No. 11-3582, 2012 WL 5989874, (E.D.N.Y. Nov. 30, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Thomas v. Little Flower for Rehab. & Nursing, 1199 SEIU Nat'l Benefit Fun and 1199 SEIU United Healthcare Workers East*,
793 F.Supp.2d 544 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United Parcel Service, Inc. v. Mitchell*,
451 U.S. 56 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United Steelworkers of Am. v. Rawson*,
495 U.S. 362 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Vaca v. Sipes*,
386 U.S. 171 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24

*Valencia ex rel. Franco v. Lee*,
316 F.3d 299 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 26

*Vera v. Saks & Co.*,
335 F.3d 109 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*White v. White Rose Food*,
237 F.3d 174 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23

*Young v. U.S. Postal Serv.*,
907 F.2d 305 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Zuckerman v. Volume Services America, Inc.*,
304 F.Supp.2d 365 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## STATUTES

28 U.S.C. § 13673(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Labor Management Relations Act,*
29 U.S.C. § 160(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*National Labor Relations Act,*
29 U.S.C. § 159(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## PRELIMINARY STATEMENT

Plaintiff Sherry Grant ("Plaintiff" or "Grant") is an employee of United Cerebral Palsy of New York City, Inc. ("UCP"). She was hired as a Residence Program Specialist in 2000. In 2011, Grant became the subject of an investigation based upon an allegation that she stated a consumer should burn to death. Pursuant to the collective bargaining agreement, Grant was reassigned to her home pending UCP's investigation into the allegations. In or about late October/early November, according to Grant, UCP informed her that these allegations were unfounded. Thereafter, UCP transferred Grant's assignment from the Landings site to a site on East 51st Street. Grant alleges that UCP attempted other transfers of her assignment. Specifically, she alleges that each of these assignments violated the collective bargaining agreement, of which she was a beneficiary.

Grant alleges in the Second Amended Complaint ("SAC") that the United Federation of Teachers (the "UFT") breached the duty of fair representation ("DFR") and retaliated against her by indicating an unwillingness to file a grievance on her behalf in connection with UCP's transfer, and attempted transfers, of her work assignment. She further alleges that UFT breached the duty of fair representation and retaliated against her by pursuing a grievance initiated on her behalf with unreasonable delay. Additionally, Grant alleges that the UFT undermined her interests at both a meeting held in November, 2011, which concerned UCP's purported attempt to transfer her assignment, as well as at a Step One meeting, held in connection with a grievance the UFT filed on her behalf. Grant also avers that the UFT retaliated against her for lodging complaints of sex discrimination against UCP and for engaging in protected activity in connection with the same.

1

As set forth below, the SAC should be dismissed because (1) the SAC fails to establish or plead a plausible claim that the UFT's actions were arbitrary, discriminatory or in bad faith; (2) Plaintiff failed to exhaust her administrative remediation prior to initiating the instant proceeding; (3) the allegations set forth in the SAC are time-barred; (4) the SAC is devoid of any factual allegations to support a plausible claim of discrimination pursuant to state and/or city laws against the UFT and, even if it did, this Court should decline pendant jurisdiction over the same.

Consequently, as set forth below, the SAC should be dismissed, in its entirety.

## STATEMENT OF FACTS

The following facts are alleged in the SAC and the UFT accepts them as true for purposes of this motion.

Grant worked as a Residence Program Specialist with UCP. SAC, ¶8. Throughout her employment with UCP, Grant has also been a member of the UFT. SAC, ¶8. Plaintiff has had a pending lawsuit against UCP in the United States District Court, Southern District of New York, since January, 2011, in which she asserts claims against UCP of sex discrimination and retaliation for complaining about sex discrimination and for complaining about retaliation for engaging in protected activity. SAC, ¶¶9, 12. Plaintiff alleges that prior to bringing that lawsuit, she lodged complaints against UCP with the New York State Division of Human Rights ("DHR") and U.S. Equal Employment Opportunity Commission ("EEOC") for discrimination and retaliation. SAC, ¶9. Plaintiff further alleges that she had also complained about sex discrimination to managerial staff at UCP. SAC, ¶9.

In October, 2011, Grant was the subject of an investigation based upon an allegation that she stated a consumer should burn to death. SAC, ¶10. UCP sent Grant home to wait for the

outcome of the investigation. SAC, ¶10. In or about late October/early November, 2011, Grant alleges that UCP informed her that the allegations against her had been determined to be unfounded. SAC, ¶11. However, rather than returning Grant to her position at the Landings unit/site, UCP transferred her to a site at East 51st Street, where she was scheduled for ten hours less, and, consequently, paid less than she had been paid while working at the Landings unit/site. SAC, ¶¶11-12. Grant asserts that UCP breached "several provisions of the Collective Bargaining Agreement" ("CBA") in transferring her. SAC, ¶13.

On or about November 3, 2011, Grant asked the UFT to file a grievance on her behalf regarding the transfer from the Landings site to the East 51st Street site. SAC, ¶14. Grant avers that the UFT was aware of the purported facts surrounding her situation at the time, including her complaint of discrimination against UCP. SAC, ¶14. Although Grant asserts that the UFT indicated an unwillingness to file a grievance on her behalf (SAC, ¶¶14, 19), she acknowledges that the UFT filed a grievance on her behalf in the middle of December, 2011, regarding her removal from the Landings site. SAC, ¶19.

In the interim, on or about November 16, 2011, Grant participated in a meeting concerning her assignment. SAC, ¶15. Individuals from both the UCP and the UFT participated in this meeting, including Grant's UFT Chapter Leader Thara Boucicault and UFT representative Olivia Wint. SAC, ¶¶14-15. At this meeting, Grant alleges that UCP offered her two transfer options. SAC, ¶16. If Grant was not amenable to either of these options, she alleges that she would have had to stay home without pay. SAC, ¶16. Grant avers that both options were undesirable due to either the geographic location of the placement or her purported belief that the workload would be challenging. SAC, ¶16. During this meeting, UFT Chapter Leader Thara Boucicault inquired as to why UCP was offering her placements in other boroughs. SAC, ¶16.

3

Additionally, Grant alleges that Ms. Boucicault sent her a text during the meeting, suggesting that she decline the assignment to the Brooklyn site at which the work would be "exceptionally grueling." SAC, ¶16. After this meeting, UCP placed Grant on an unpaid leave of absence. SAC, ¶20.

Thereafter, Grant asked the UFT about what occurred at the November 16th meeting. SAC, ¶19. Grant contends that the UFT indicated an unwillingness to grieve UCP's transfer of her assignment from the Landings site to the East 51st Street and to grieve UCP's additional attempt to transfer her. SAC, ¶19. Nonetheless, as stated above, the UFT filed a grievance on Grant's behalf in December, 2011. SAC, ¶20. In early April, 2012, Grant participated in a Step One meeting in connection with the grievance. SAC, ¶20. Ms. Wint and Ms. Boucicault also attended this meeting with Grant. SAC, ¶21. At the meeting, UCP offered Grant additional options for placement. SAC, ¶21. Grant asserts that each of these placements offered fewer hours than she had worked at the Landings site. SAC, ¶21. Nonetheless, Grant was inclined to accept one of the placements. SAC, ¶21. However, after being presented with an agreement, which contained a provision, stating "Ms. Grant agrees that she has been fully and fairly represented by the UFT with respect to the negotiation and execution of this Agreement," Grant refused to sign the agreement. SAC, ¶21. Thereafter, she did not return to work. SAC, ¶21.

On May 30, 2012, during a deposition of Alan Seiler, the former Director of Human Resources at UCP and UCP's designee at Step Two of the grievance procedure, Grant asserts that she discovered that Mr. Seiler never put his reasons in writing for denying grievances of disciplinary actions and that UFT did not complaint about or challenge his failure to do so. SAC, ¶22. In connection with these allegations, Grant refers to various grievances she filed between July, 2009, and August, 2011. SAC, ¶24. Grant alleges that the UFT's purported failure to

4

require that Mr. Seiler put his reasons in writing would have negatively affected and prejudiced Grant in the grievance process by allowing the employer "in general to act with little accountability [making] it very easy for Mr. Seiler to deny grievances for no legitimate reason" which in turn "inhibited UFT from being able to fairly and properly evaluate whether to take grievances denied by Mr. Seiler to arbitration." SAC, ¶¶ 23-24.

NYC-Legal: 154384

## ARGUMENT

## POINT I

## GRANT'S HYBRID CLAIMS MUST BE DISMISSED BECAUSE THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM TO RELIEF THAT IS PLAUSIBLE ON ITS FACE

The SAC asserts a so-called "hybrid § 301/fair representation" claim against the UFT and UCP. When an employee alleges both a breach of a collective bargaining agreement and breach of a union's duty of fair representation, the claim is considered a hybrid section 301/duty of fair representation ("DFR") claim. "A hybrid case is one in which the employee has a cause of action against both the employer and the union." *McKee v. Transco Prods., Inc.*, 874 F.2d 83, 86 (2d Cir. 1989). In such a hybrid case, the claim against the employer is for violating the terms of a collective bargaining agreement pursuant to § 301 of the *Labor Management Relations Act*, 29 U.S.C. § 160(b), and the claim against the union is for violating its duty of fair representation contrary to *Vaca v. Sipes*, 386 U.S. 171 (1967)." *McKee*, 874 F.2d at 86.

Section 301 of the *Labor Management Relations Act* ("*LMRA*") governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied from § 9(a) of the *National Labor Relations Act*, 29 U.S.C. § 159(a) ("*NLRA*"). *White v. White Rose Food*, 237 F.3d 174, 179 n.3 (2d Cir. 2001). Because a plaintiff must establish both a violation of section 301 and a breach of the duty of fair representation in order to prevail, this type of claim is referred to as a "hybrid § 301/duty of fair representation" claim. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (stating that the two claims that comprise a hybrid "section 301/DFR" claim are "inextricably interdependent."). To prevail on a hybrid § 301/duty of fair representation claim, Plaintiff must establish both that: (1) the UFT breached the duty of fair representation; and (2) UCP breached the collective bargaining agreement. *See*

*Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)); *see also Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 34 (2d Cir. 2000) (finding that because an employer's violation of a collective bargaining agreement is ordinarily enforced by the union, unless an employee proves both claims, he or she cannot prevail against either party).

## A.    The Standard Of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in favor of the non-moving party. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has a facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2012).

The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) (citing *Ashcroft*, 556 U.S.662). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *See Harris*, 572 F.3d at 72 (citations omitted); *see also Smith v. Local 819 I.B.T.*

*Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (stating that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires that reviewing court to draw on its judicial experience and common sense.'" *See Harris*, 572 F.3d at 72 (citations omitted).

**B.    Plaintiff Has Failed To State A Duty Of Fair Representation Claim Against The UFT That Is Plausible On Its Face**

Plaintiff has failed to plead a plausible cause of action against the UFT for breaching the duty of fair representation. In order to establish a breach of the duty of fair representation, Grant must show both that the UFT's conduct towards her was "arbitrary, discriminatory, or in bad faith" and that the damages she suffered, if any, were caused by the UFT's breach. *See Sanozky*, 415 F.3d at 282-83 (citing *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33 (1998)); *Mussafi v. Fishman*, No. 12-2071, 2012 WL 5473874, at *6 (S.D.N.Y. Nov. 12, 2012) (establishing that "[t]o meet the second requirement for a breach of the duty of fair representation claim, a plaintiff must 'demonstrate a causal connection between the union's wrongful conduct and [her] injuries.'") (citations omitted). A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Sanozky*, 415 F.3d at 282-83 (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). Arbitrary conduct includes both intentional conduct and "acts of omission which, while not calculated to harm union members, may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *NLRB v. Local 282, Int'l Bhd. of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984).

8

Judicial review of union action "must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *O'Neill*, 499 U.S. at 78; *Mussafi v. Fishman*, No. 12-2071, 2012 WL 5473874, at *4 (S.D.N.Y. Nov. 12, 2012) (dismissing DFR claims against union president). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Mussafi*, 2012 WL 5473874, at *4 (quoting *Marquez*, 525 U.S. at 45-46). "Even if union action rises to the level of negligence, 'mere negligence . . . would not state a claim for breach of the duty of fair representation . . . .'" *Mussafi*, 2012 WL 5473874, at *4 (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990)). Furthermore, bad faith, which "encompasses fraud, dishonesty, and other intentionally misleading conduct," requires proof that the union acted with an "improper intent, purpose, or motive." *Spellacy v. Air Line Pilots Ass'n, Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). A union's acts are discriminatory when "substantial evidence" indicates that it engaged in discrimination that was "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971).

Where, "an employee claims that a union's decision not to file a grievance is a breach of the duty of fair representation, courts typically seek to determine whether the union's conduct can be characterized as arbitrary." *Clarke v. Commc'ns Workers of America*, 318 F.Supp.2d 48, 56 (E.D.N.Y. 2004). A union acts arbitrarily in failing to initiate or process a grievance when it "ignores or perfunctorily presses a meritorious claim." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 16 (2d Cir. 1993) (quoting *Vaca v. Sipes*, 386 U.S. 171, 191 (1967)). However, a union does not act arbitrarily where it "fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance."

9

*Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154-55 (2d Cir. 1994). As a result, although a union has a "duty to perform some minimal investigation," (*Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1395 (9th Cir.1985), "only an 'egregious disregard for union members' rights constitutes a breach of the union's duty' to investigate." *Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416 (1st Cir. 2005) (citations omitted). Furthermore, "[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Serv.*, 868 F.2d 36, 43 (2d Cir. 1989). Accordingly, to find a breach of the duty of fair representation based on arbitrary conduct, the Court must determine whether the plaintiff has plausibly alleged that: (1) the plaintiff had a meritorious grievance; (2) the UFT was aware of the grievance; and (3) the UFT acted arbitrarily in failing to process the Plaintiff's grievance. *See Young v. U.S. Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990).

In the SAC, Grant mainly alleges that the UFT breached its duty of fair representation with regard to UCP's transfer of her from the Landings site by: (1) conveying an unwillingness to file, and failing to file, a grievance for a significant period of time regarding the transfers/attempted transfers of Plaintiff while having filed grievances on behalf of members for matters that were less grave and serious; (2) overtly siding with UCP, representing UCP's interests rather than Grant's interests, and trying to facilitate another transfer of Grant both at and after a November 11, 2011 meeting; (3) prosecuting a grievance that the UFT filed in December, 2011, in a non-expeditious manner; (4) failing to properly represent Grant at the Step One grievance meeting; and (5) conditioning Grant's return to work on her assent to a clause in a written agreement, which Grant never signed, stating that she had been fully and fairly

NYC-Legal: 154384

represented by the UFT with respect to the negotiation and execution of said agreement. The UFT addresses each of these claims separately in the following subsections.

i.      <u>Grant's allegations that the UFT conveyed an unwillingness to file, and failed to file, a grievance for a significant period of time regarding her transfers/attempted transfers fail to set forth a claim to relief that is plausible on its face</u>

With respect to Plaintiff's first claim, asserting that the UFT conveyed an unwillingness to file and failed to file a grievance for a "significant period of time" while the UFT purportedly filed grievances on behalf of other members for less serious matters, Plaintiff has failed to allege that the UFT's conduct in pursuing a grievance on her behalf was arbitrary, discriminatory, or in bad faith. Notably, Plaintiff concedes, albeit reluctantly, that the UFT filed a grievance on her behalf in December, 2011. SAC, ¶20. Although the UFT filed this grievance more than ten days from the facts giving rise to the grievance, such constitutes mere negligence, at best, and does not rise to the level of arbitrary, discriminatory conduct perpetrated in bad faith. As set forth above, mere negligence does not rise to the level of a breach in DFR. *Mussafi*, 2012 WL 5473874, at *4 (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990)).

Nonetheless, the UFT's alleged conduct in this regard does not amount to negligence in light of the factual circumstances surrounding the filing of the grievance. Specifically, the UFT filed a grievance on Plaintiff's behalf soon after a meeting held on November 16, 2011, in which Plaintiff, two (2) UFT representatives, and employees of UCP discussed Plaintiff's work assignment. SAC, ¶¶15, 16. At the November 16th meeting, UCP offered Plaintiff two options to transfer to sites other than the East 51st Street site. SAC, ¶16. The November 16th meeting occurred after Plaintiff complained to the UFT regarding her transfer from the Landings site to the East 51st Street site. SAC, ¶¶14-15. Pursuant to the Grievance and Arbitration Procedure set forth in the CBA annexed to the SAC, Article 29(B) sets forth an "Informal Resolution"

procedure which may be utilized to "resolve individual grievances promptly, without recourse to the formal grievance procedure." *See* CBA at 21. Based on the allegations set forth in the SAC, the November 16th meeting may plausibly be construed as a meeting held to resolve Plaintiff's potential grievance informally, prior to seeking recourse through the formal grievance procedure. Thus, the November 16th meeting may not plausibly be construed to constitute a delay tactic on the part of the UFT.

In any event, the passage of time between November 3, 2011, which is the approximate date on which Plaintiff alleges she requested that the UFT file a grievance on her behalf, and the filing of the grievance in mid-December, 2011, is not so significant such that it would rise to the level of a breach in the DFR. *See Gaines v. New York City Transit Auth.*, 528 F.Supp.2d 135, 149-51 (E.D.N.Y. 2007) (finding that union's representation of plaintiff was not irrational or unreasonable even though the union sought multiple adjournments of grievance and also finding that plaintiff's assertions that the adjournments of the grievance had a negative impact on his employment were purely speculative because the grievance was never finally arbitrated); *see also Mazza v. Dist. Council of New York, et al.*, 2007 WL 2668116, *12-13 (E.D.N.Y. Sept. 5, 2007) (determining that union's prosecution of back pay grievance was "not aggressive enough, not fast enough, and that [plaintiff] was not kept sufficiently informed along the way" is not a breach without evidence of bad faith); *Hands v. DaimlerChrysler Corp.*, 2005 WL 1828787, *4-5 (D.Ohio July 29, 2005) (declining to find a breach of the duty of fair representation where union took two years to process grievance); *Armstrong v. Chrysler Corp.*, 972 F.Supp. 1085, 1090 (D.Mich. 1997) (same); *Bellesfield v. RCA Comm., Inc.*, 675 F.Supp. 952, 958 (D.N.J. 1987) (finding that union's year-long delay in processing plaintiff's wage adjustment grievance was not evidence of bad faith).

12

Without specifying a date, Plaintiff alleges that she subsequently repeatedly contacted the UFT "about what occurred at the meeting." SAC, ¶18. Curiously, Plaintiff does not allege that she requested that the UFT grieve any of UCP's efforts to transfer Plaintiff through any of these repeated contacts; nonetheless, she baldly asserts the UFT indicated an unwillingness to grieve her transfer. Notably, Plaintiff does not allege that the UFT refused to pursue a grievance on her behalf or to investigate the issues she brought to the UFT's attention.

For the reasons set forth in the preceding paragraphs of subsection (i), the factual circumstances surrounding the filing of the grievance do not sufficiently allege conduct that is arbitrary or in bad faith on the part of the UFT. The allegations set forth in the SAC also fail to set forth a claim to relief plausible on its face that the UFT discriminated against Plaintiff. In a wholly conclusory manner, Plaintiff baldly asserts that the UFT has filed grievances for other members on issues that were less grave and serious and that had less of an impact on those members. SAC, ¶14. Plaintiff's allegations are devoid of facts regarding any of the grievances to which she refers. Nonetheless, Plaintiff's self-serving assertion that her grievance was, in essence, more important than the grievances of other UFT members is supported only by mere conclusory statements and should not be taken as true, even for purposes of this motion. *See Harris*, 572 F.3d at 72. Thus, Plaintiff has failed to allege a plausible claim that the UFT discriminated against her in connection with the grievance concerning her transfers/attempted transfers.

Furthermore, the SAC does not plausibly plead the second element of a DFR claim; that is, the requirement to demonstrate that plaintiff's purported damages were caused by the UFT's alleged breach of the duty of fair representation. Specifically, Plaintiff has failed to allege facts sufficient to establish any causal connection between the damages, if any, she apparently asserts

she suffered and the UFT's alleged breach regarding the processing of her grievance. Although the SAC baldly alleges that Grant sustained "lost wages and benefits as a result of UFT's and UCP's actions and omissions" as well as "severe emotional and mental distress" (SAC, ¶25), she does not sufficiently and plausibly link the filing or processing of the grievance with the purported lost wages and benefits she suffered. Notably, by Plaintiff's own admissions, the grievance concerning Plaintiff's transfer(s) proceeded to Step One. Therefore, her allegations fail to establish how she may have been harmed by the alleged delayed filing of this grievance.

ii.  Grant's claim alleging that the UFT did not represent her interests is not plausible

With respect to her second claim, Plaintiff has failed to plead sufficient facts to state a DFR claim plausible on its face that the UFT overtly sided with UCP, represented UCP's interests rather than her interests, and tried to facilitate another transfer of Plaintiff at and after the November 16th meeting. At a minimum, Plaintiff's allegations illustrate that the UFT conducted at least a minimal investigation into UCP's attempts to transfer Plaintiff's assignment and that, contrary to her claims, the UFT acted to assist Plaintiff in escaping an undesirable and challenging assignment. The UFT's contentions in this regard are particularly supported by Plaintiff's assertion that, at the November 16th meeting, Plaintiff's UFT Chapter Leader Thara Boucicault questioned why UCP was attempting to send Plaintiff to another borough. SAC, ¶16. Moreover, Plaintiff concedes that Ms. Boucicault sent a text message to her during the meeting not to take the assignment in Brooklyn, as the work there was exceptionally grueling. SAC, ¶16. Plaintiff's allegations in this regard fail to plead enough facts to state a claim plausible on its face that the UFT breached its duty of fair representation to her in connection with the UFT representatives' conduct during the November 16, 2011 meeting. *Cf. Thomas v. Little Flower for Rehab. & Nursing, 1199 SEIU Nat'l Benefit Fun and 1199 SEIU United*

14

*Healthcare Workers East*, 793 F.Supp.2d 544 (E.D.N.Y. 2011) (finding that the complaint plausibly asserted that union's conduct in failing to initiate or process plaintiff's grievance was more than mere negligence or a tactical error, but rather arbitrary, discriminatory, or in bad faith).

Plaintiff's allegations regarding Olivia Wint's purported conduct towards her also fail to state a claim plausible on its face that the UFT breached the DFR. Perplexingly, Plaintiff alleges that Ms. Wint both "took over the 'representation' of her at the [November 16th] meeting" and also "failed to represent Plaintiff at the meeting." SAC, ¶16. Notwithstanding Plaintiff's inconsistent allegations concerning Ms. Wint's conduct at the November 16th meeting, Plaintiff has failed to plead facts sufficient to establish that any damages she alleges stemmed from Ms. Wint's behavior. Specifically, although Plaintiff alleges that Ms. Wint overtly sided with and defended UCP, as well as tried to facilitate another transfer of Plaintiff, Plaintiff's allegations reveal that despite such alleged pressures, she did not take any of the adverse transfer options presented to her at or after the November 16th meeting. Consequently, Plaintiff's assertions do not indicate any causal connection between the UFT's purported breach and her alleged damages. At best, Plaintiff's allegations amount to nothing more than an expression of dissatisfaction with the manner in which the Ms. Wint and Ms. Boucicault represented her at the November 16th meeting. Allegations of this nature are insufficient to state a DFR claim that is plausible on its face. *See Saidin v. New York City Dept. of Educ.*, 498 F. Supp.2d 683, 689 (S.D.N.Y. 2007) (finding that "[n]either a union's decision not to pursue an employee's grievance to every level of the applicable procedure, nor the employee's dissatisfaction with the manner in which the union conducted the representation, constitutes sufficient grounds warranting a finding of a breach of the duty of fair representation.").

NYC-Legal: 154384

iii.    Grant's assertions that the UFT failed to prosecute her grievance in a non-expeditious manner fail to set forth a claim that is plausible on its face

With respect to Plaintiff's third claim, she alleges that the UFT breached its duty of fair representation to her in prosecuting the December, 2011, grievance in a non-expeditious manner. As set forth more fully in subsection (i) above, Plaintiff has failed to plead facts sufficient to set forth a claim plausible on its face that the UFT unduly delayed in filing the grievance on her behalf such that the UFT's conduct in this regard would constitute behavior so far outside a wide range of reasonableness as to be irrational. *See Gaines v. New York City Transit Auth.*, 528 F.Supp.2d 135, 149-51 (E.D.N.Y. 2007); *see also Mazza v. Dist. Council of New York, et al.*, 2007 WL 2668116, *12-13 (E.D.N.Y. Sept. 5, 2007); *Hands v. DaimlerChrysler Corp.*, 2005 WL 1828787, *4-5 (D.Ohio July 29, 2005); *Armstrong v. Chrysler Corp.*, 972 F.Supp. 1085, 1090 (D.Mich. 1997); *Bellesfield v. RCA Comm., Inc.*, 675 F.Supp. 952, 958 (D.N.J. 1987).

Additionally, Plaintiff's allegations fail to demonstrate a causal connection between the UFT's purported wrongful conduct and her injuries. Plaintiff asserts that the "UFT failed to make reasonable efforts to expeditiously schedule a Step One meeting on the grievance, as a Step One meeting was not held until early April 2012." SAC, ¶20. However, pursuant to Article 29(C)(1) of the CBA, the onus is on the "Employer's Designee" or "designated alternate" to "meet with the grievant and the Chapter Leader . . . within ten days of the submission of a formal grievance." Thus, any delay in scheduling to Step One meeting may be attributed to UCP's actions or omissions, as the employer, not those of the UFT. Consequently, Plaintiff's third claim as against the UFT fails to set forth allegations plausible on their face to establish that the UFT breached its duty of fair representation to her.

NYC-Legal: 154384

iv.     Grant has failed to allege a plausible claim that the UFT failed to properly represent her at the Step One grievance meeting

As and for a fourth claim, Plaintiff alleges that the UFT failed to properly represent her at the Step One grievance meeting. Specifically, Plaintiff alleges that the grievance was not actually prosecuted at the Step One meeting and that the UFT did not advocate for Plaintiff to be reinstated to the Landings. SAC, ¶21. Plaintiff's allegations are not plausible in light of her assertion that, at the Step One meeting, she "was offered a few options for placement by UCP . . . ." SAC, ¶21. Given that Plaintiff's grievance concerned her transfer from the Landings site, Plaintiff's acknowledgment that the Step One meeting involved discussions concerning her placement shows that the grievance was actually prosecuted at said meeting.

Additionally, although Plaintiff contends that the UFT did not advocate for her to be reinstated to the Landings site, she has failed to allege any facts in the SAC establishing her entitlement, pursuant to the CBA, to such reinstatement. Specifically, Plaintiff alleges that UCP informed her that the allegations against her had been determined to be "unfounded." SAC, ¶11. However, pursuant to Appendix B to the CBA, which outlines the Investigation Process, investigations into allegations of client abuse result in only three potential outcomes: "substantiated," "false," or "inconclusive." Plaintiff has failed to allege that UCP determined that the allegations lodged against her were "false." Rather, she describes them as "unfounded." According to the CBA, only employees' whose allegations are deemed to be false are guaranteed reinstatement, as Appendix B provides that, in some cases, where the results of an investigation are inconclusive, the affected employee may be transferred to another program. Furthermore, Article 27(D) of the CBA affords UCP the right to transfer employees from their work site to other work sites "for reasons of agency or consumer needs." This contractual provision further provides that such transfers are "neither arbitrary nor capricious." The SAC is devoid of any

17

allegation that UCP's transfer and/or attempted transfer of her work site was not based upon an agency or consumer need. SAC, ¶13. As Plaintiff's allegations fail to set forth a plausible claim that she was contractually entitled to be reinstated to the Landings site, she has failed to plead a plausible DFR claim against the UFT of purportedly failing to argue for the same.

Moreover, at best, Plaintiff's allegations amount to nothing more than an expression of dissatisfaction with the manner in which the UFT represented her at the Step One meeting. As previously asserted, allegations of this nature are insufficient to state a DFR claim that is plausible on its face. *See Saidin v. New York City Dept. of Educ.*, 498 F. Supp.2d 683, 689 (S.D.N.Y. 2007). Therefore, this claim should be dismissed.

v.  Grant's assertions concerning a written agreement, which she admittedly never signed, do not allege a DFR claim that is plausible on its face

Finally, Plaintiff alleges that the UFT violated its duty of fair representation to her by conditioning her return to work on her assent to a clause in a written agreement. The crux of Plaintiff's claim in this regard is that the "UFT put Plaintiff in the unfair and unjust position of having to waive her right to hold UFT liable for its actions and omissions in order to return to work." SAC, ¶21. Plaintiff's claims in this regard fail to set forth a claim against the UFT plausible on its face for two reasons. First, New York state courts enforce 'a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into . . .as a private agreement between the parties.'" *See Skluth v. United Merchants and Mfrs. Inc.*, 163 A.D.2d 104, 106 (1st Dept. 1990); *Laramee v. Jewish Guild for the Blind*, 72 F.Supp.2d 357, 359 (S.D.N.Y 1999). Furthermore, the SAC fails to allege how or in which ways the presentation of an agreement containing the language in question is arbitrary, discriminatory, or in bad faith. Second, Plaintiff alleges that she "could not and did not sign the agreement. . . ." SAC, ¶ 21.

18

Therefore, Plaintiff's allegations fail to demonstrate any causal connection between the UFT's purported wrongful conduct and her injuries. Therefore, this claim should be dismissed.

vi.      <u>Grant's DFR claim fails because she has not plead facts that would allow this Court to draw a reasonable inference that the UFT is liable for her alleged injuries or damages</u>

Throughout the SAC, Plaintiff avers that the UFT was aware of a discrimination/retaliation lawsuit she had pending against UCP, as well as prior complaints she purportedly lodged against UCP. SAC, ¶14. However, besides baldly alleging the UFT's awareness of the same, Plaintiff has failed to plead any connection between the UFT's purported knowledge of the same and its actions or omissions which are the subject of her instant claims. Stated differently, Plaintiff has failed to allege a motive on the part of the UFT or its agents in discriminating or retaliating against her on the basis of mere knowledge of her litigation and complaints against UCP. Her contentions in this regard are speculative, implausible, and insufficient to prevent a motion to dismiss.

Plaintiff's allegations of discrimination and retaliation on the part of the UFT appear to be based solely on the temporal proximity between the initiation of a lawsuit against UCP, as well as, prior complaints she lodged against UCP of which the UFT purportedly had knowledge. Plaintiff's lawsuit against UCP has been pending since January, 2011. SAC, ¶9. Plaintiff also indicates that at an unspecified point in time prior to initiating the January, 2011, suit, she made other complaints of discrimination against UCP. SAC, ¶9. The allegations underlying the instant matter occurred, at the earliest, "[i]n or about late October/early November 2011", several months later. SAC, ¶¶10-12. Plaintiff bases her allegations against the UFT on its purported awareness of her lawsuit and prior complaints. SAC, ¶14. A ten or eleven month span of time between the initiation of Plaintiff's suit against UCP is too attenuated to plausibly allege a connection between her protected activity and the UFT's alleged actions in processing her

19

grievance. *See Taylor v. New York City Dept. of Educ.*, No. 11-3582, 2012 WL 5989874, *12 (E.D.N.Y. Nov. 30, 2012) (finding that a ten month interval between plaintiff's administrative complaints and her receipt of an adverse performance review was "too prolonged" to permit a plausible inference of causal connection); *Milne v. Navigant Consulting, Inc.*, No. 08-8964, 2012 WL 3283454, *8 (S.D.N.Y. Aug. 13, 2012) (determining that "[a]bsent other evidence of causation, these gaps in time (10 and seven months, respectively) are too substantial to allow an inference of causation based on temporal proximity alone."); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' ").

Furthermore, Plaintiff has not plead any facts in support of her singular, conclusory assertion that she has suffered emotional and mental distress. Therefore, in sum, Plaintiff has failed to plead enough facts to state a DFR claim against the UFT that is plausible on its face.

### C. This Court Need Not Reach The Issue Of Whether Plaintiff Alleged A Plausible Claim That UCP Breached The CBA Because Plaintiff Has Failed To Allege Facts Sufficient To Establish The UFT's Breach Of DFR

The issue of whether the employer violated the collective bargaining agreement is only reached if the employee first proves that the union violated the duty of fair representation. *See United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62 (1981). As set forth more fully above, Grant has failed to allege a plausible claim that the UFT violated its duty of fair representation. Consequently, this Court need not determine the issue of whether Grant alleged a plausible claim against UCP and should dismiss the SAC in its entirety.

NYC-Legal: 154384

## POINT II

### GRANT'S CLAIMS MUST ALSO BE DISMISSED BECAUSE SHE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES

Grant's claims fail because she failed to fully exhaust the contractual grievance and arbitration procedure set forth in Article 29 of the CBA. The CBA gives the UFT and its members the express right to file grievances. The formal grievance procedure includes two steps. Thereafter, if a grievance is not resolved at Step Two, the UFT may determine whether arbitration is appropriate.

In *Republic Steel v. Maddox*, 379 U.S. 650 (1965), the Court held that an employee must exhaust the CBA grievance procedure before bringing a § 301 action because failing to do so would deprive the employer and the union of the ability to establish an exclusive method for orderly settlement of employee grievances. *See also DelCostello v. Teamsters*, 462 U.S. 151 (1983); *Clayton v. UAW*, 451 U.S. 679, 686 (1981); *Tand v. Solomon Schechter Day Sch. of Nassau County*, 324 F.Supp.2d 379 (E.D.N.Y. 2004) (granting motion to dismiss based, in part, on plaintiff's failure to exhaust administrative remedies pursuant to contract). In *Tand*, this Court explained that "when a [CBA] provides for arbitration and grievance procedures for employee grievances, the aggrieved employee must make an attempt to exhaust the procedures set forth in the governing [CBA] prior to resorting to judicial relief." *Id.* at 384 (some citations omitted); *Lopez v. Time, Inc.*, No. 93 Civ. 5330, 1994 WL 88062, at *5 (S.D.N.Y. Mar. 14, 1994) (providing that "[i]t is well established that, before bringing a section 301 action in federal court against an employer, a plaintiff-employee must first exhaust grievance procedures provided by the relevant [CBA]."); *Cespuglio v. Ward*, No. 03 Civ. 8603, 2004 WL 1088235, at *4 (S.D.N.Y. 2004) (stating that "[i]f employees could sue under section 301 in federal courts in the first instance, mandatory grievance or arbitration proceedings would be meaningless."). The

21

Second Circuit emphasized a plaintiff's requirement to exhaust administrative remedies by stating that "[a]bsent an express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration will satisfy a party's substantial hurdle to rebut this presumption of arbitrability." *See Vera v. Saks & Co.*, 335 F.3d 109, 118 (2d Cir. 2003).

Grant abandoned the grievance procedure at Step One. SAC, ¶21. The SAC is devoid of any specific allegation as to why she did not appeal to Step Two of the contractual grievance procedure or, similarly, as to why she did not request that the UFT continue to pursue the grievance, on her behalf, to Step Two. SAC, ¶21. Plaintiff has failed to plead a plausible basis for excusing the exhaustion of grievance and arbitration remedies. *See, e.g.*, *Tand*, 324 F.Supp.2d. As Plaintiff has failed to fully exhaust the contractual grievance and arbitration procedures applicable to her, it is respectfully submitted that this Court cannot determine whether Plaintiff has a valid claim for relief. Therefore, the Court should grant this motion to dismiss the SAC in its entirety. *See, e.g.*, *Gaines v. New York City Transit Auth.*, 528 F.Supp.2d 135, 149-51 (E.D.N.Y. 2007).

NYC-Legal: 154384

## POINT III

**GRANT'S CLAIMS CONCERNING THE UFT'S PURPORTED FAILURE TO MANDATE THAT UCP'S STEP TWO DESIGNEE EXPLAIN HIS REASONS FOR DENYING GRIEVANCES FILED BETWEEN 2009 AND 2010 SHOULD BE DISMISSED AS TIME-BARRED AND AS INSUFFICIENT**

Grant's claim that the UFT breached its DFR by not mandating that UCP's designee at Step Two put in writing or explain his reasons for denying grievances she purportedly filed between 2009 and 2010 is untimely. SAC, ¶29. A hybrid § 301/fair representation claim is subject to a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170-72 (1983); *Carrion Enterprise Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000). This six-month period "begins to run when the employee knew or should have known of the breach of the duty of fair representation." *White v. White Rose Food*, 128 F.3d 110, 114 (2d Cir. 1997). The law in the Second Circuit "is well settled that a continuous or ongoing failure by the union to represent a plaintiff after the plaintiff knows or should know of the breach does not toll the statute of limitations." *Strassberg v. N.Y. Hotel & Motel Trades Council*, 31 F. App'x. 15 (2d Cir. 2002) (summary order). As Grant's claim is based on allegations stemming from 2009 and 2010, her claim is wholly outside of the six-month statute of limitations applicable to such claims. Therefore, this Court should dismiss this claim.

It is anticipated that Grant will assert that she did not become aware of this alleged breach of the duty of fair representation until the deposition of Mr. Seiler in May, 2012, thereby tolling the six-month period. Nonetheless, such arguments are simply not plausible. Each of the four grievances referenced by the SAC were initiated in 2009 and 2010. SAC, ¶24. The UFT informed Plaintiff it would not take two of the four grievances to arbitration in May, 2011, and August, 2011, respectively. SAC, ¶24. Therefore, with respect to these two grievance, at the

23

latest, Plaintiff was aware of a potential DFR claim as of the May, 2011, and August, 2011, respectively. Consequently, her claims in connection with the same should be dismissed as time-barred. Plaintiff fails to allege when she learned that the UFT would not take the other two grievances she filed to arbitration; nonetheless, Plaintiff does not allege that she learned as late as the date of Mr. Seiler's deposition (i.e. May 30, 2012). Therefore, this Court should dismiss Plaintiff's claims in this regard as untimely.

In the alternative, Grant's allegations that the UFT's purported failure to enforce the contract and require that Mr. Seiler justify and substantiate his negative decision in writing do not plead a claim of DFR that is plausible on its face. SAC, ¶23. Her allegations in this regard are wholly conclusory in that Grant assumes, without basis, that the Mr. Seiler's Step Two determinations inhibited the UFT from being able to fairly and properly evaluate whether to take grievances denied by him to arbitration. SAC, ¶24. In any event, it is well established that a union does not violate the DFR by exercising its discretion in declining to take all cases to arbitration. *Vaca*, 386 U.S. 171; *Spellacy*, 156 F.3d at 130.

Grant's claims also fail because she has failed to allege a plausible causal connection between the UFT's purported wrongful conduct (i.e. its alleged failure to enforce the contract in connection with grievances Grant filed in 2009 and 2010) and the prejudice she allegedly suffered in connection with the grievance process at the heart of this action or any of her alleged "injuries" in the instant matter. *Mussafi v. Fishman*, No. 12-2071, 2012 WL 5473874, at *6 (S.D.N.Y. Nov. 12, 2012) (establishing that "[t]o meet the second requirement for a breach of the duty of fair representation claim, a plaintiff must 'demonstrate a causal connection between the union's wrongful conduct and [her] injuries.'"). Plaintiff's claims are further weakened by the absence of any assertion that there was a Step Two meeting held in connection with the

24

grievance filed on her behalf in December, 2011, as well as the absence of any allegation that Mr. Seiler was involved in the processing of the December, 2011 grievance filed on behalf of Grant. Additionally, Plaintiff's has failed to set forth facts warranting even a reasonable inference that any of her alleged damages or injuries resulted from grievances that she filed in 2009 and 2010 that did not culminate in arbitration. Therefore, this Court should dismiss Grant's stale, unrelated, and insufficient claims.

25

## POINT IV

### THE COURT SHOULD DECLINE JURISDICTION OVER GRANT'S REMAINING STATE AND CITY LAW CLAIMS

To the extent the SAC alleges claims arising under New York State and New York City laws, this Court should decline supplemental jurisdiction over such claims, because, as demonstrated above, Plaintiff's federal claims fail. *See* 28 U.S.C. § 13673(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction"); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 307-08 (2d Cir. 2003) (holding district court abused its discretion by exercising jurisdiction over a state-law claim following dismissal of the plaintiffs' federal claims).

Additionally, it is respectfully submitted that city and state law claims of discrimination against a union have been found to be subsumed by the DFR. *See, e.g.*, *Cole v. Cent. Park Sys., Inc.*, No. 09-CV-3185, 2010 WL 3747591, at *8 (E.D.N.Y. Sept. 20, 2010) (noting that with respect to plaintiff's claim that his union arbitrarily failed to process his grievances that "where, as here, a state law claim gives no new rights to that employee and imposes no new duty on the union, it is preempted"); *Angrisani v. Long Island R.R.*, No. CV-01-8453, 2005 WL 1311798, at *7 (E.D.N.Y. June 1, 2005) (finding that "[p]laintiff's state law claims against UTU, which, in essence, challenge its failure to file a grievance on her behalf, seek to vindicate the same rights as those protected by the federal duty of fair representation and impose no obligation on the union that is not already required by the duty of fair representation."); *Zuckerman v. Volume Services America, Inc.*, 304 F.Supp.2d 365, 373 (E.D.N.Y. 2004) (same); *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 188-89 (E.D.N.Y. 2000) (stating that "[a]s the duty of fair representation unquestionably forbids a union from discriminating against its members in its representative capacity, the contribution claim under the NYHRL cannot be said to create a new

26

right and is thus subsumed by the duty of fair representation."). Therefore, as Plaintiff has failed to set forth as plausible DFR claim, she has also failed to alleged plausible claims to relief pursuant to State and City law. Consequently, this Court should dismiss the claims Plaintiff has alleged pursuant to State and City law.

NYC-Legal: 154384

## CONCLUSION

For the foregoing reasons, the UFT respectfully requests that the Court issue an order granting its motion to dismiss the SAC with prejudice, in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      January 28, 2013

Respectfully submitted,

RICHARD E. CASAGRANDE
Attorney for UFT
52 Broadway 9th Floor
New York, NY 10004
(212) 533-6300

By:    /s/ Ariana A. Gambella
        ARIANA GAMBELLA
        (AG3067)
        Of Counsel

NYC-Legal: 154384