UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x    Docket No.: 12-CV-2149 (CBA)
SHERRY GRANT,                                                                                      (VMS)

        Plaintiff,

      -against-

UNITED FEDERATION OF TEACHERS and UNITED
CEREBRAL PALSY OF NEW YORK CITY, INC.,

        Defendants.
-------------------------------------------------------------------x


## **PLAINTIFF SHERRY GRANT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED FEDERATION OF TEACHERS' MOTION TO DISMISS**

Kathy A. Polias
Attorney-at-Law
*Attorney for Plaintiff Sherry Grant*
155 Water Street
Brooklyn, New York 11201
Tel. No.: 718-514-2062

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CASES.................................................................................ii

INTRODUCTION.................................................................................1

STATEMENT OF FACTS........................................................................1

ARGUMENT.......................................................................................2

    Plaintiff Has Pled Sufficient Facts to Make Out Claims
    that Defendant UFT Breached Its Duty of Fair Representation
    of Plaintiff In Violation of the NLRA/LMRA...........................................2

    (1)   Defendant UFT's Actions at the November 16, 2011
         Meeting Constituted A Breach of the Duty to Fairly
         Represent, Violation of the NLRA and LMRA.................................2

    (2)   Defendant UFT's Failure to File a Grievance
         Regarding the Transfer from the Landings Until Mid-
         December 2011 and Its Handling of the Grievance
         Constituted A Breach of the Duty to Fairly Represent
         Under the NLRA and LMRA......................................................8

    (3)   Defendant UFT's Conditioning of Plaintiff's Return to
         Work on Plaintiff Not Holding Defendant UFT Liable
         for Its Actions and Omissions and Waiving All Potential
         Claims Against UFT Constituted A Failure to Fairly
         Represent Under the NLRA and LMRA.......................................12

    (4)   Plaintiff Timely and Adequately Pled a Claim that Defendant
         UFT Breached The Duty of Fair Representation By Mandating
         that UCP's Step Two Designee Explain His Reasons in Writing
         for Denying Grievances Pursuant to the Collective Bargaining
         Agreement.........................................................................14

    (5)   Plaintiff Was Not Required To Plead An Exhaustion of
         Administrative Remedies.......................................................16

Plaintiff Has Alleged Sufficient Facts to Make Out Claims Under the NYSHRL
and NYCHRL That Defendant UFT Retaliated Against Plaintiff for Complaining
that Defendant UCP Discriminated Against Her on the Basis of Her Sex and
Retaliated Against Her for Her Protected Activity...........................................19

CONCLUSION.....................................................................................26

# TABLE OF CASES

**Page(s)**

Airline Pilots Ass'n, Int'l Union v. O'Neill,
499 U.S. 65 (1991)...................................................................................2

Barbara v. New York Stock Exchange, Inc.,
99 F.3d 49 (2nd Cir.1996)........................................................................19

Birkholz v. The City of New York,
2012 U.S. Dist. LEXIS 22445 (E.D.N.Y. Feb. 22, 2012)...............................20, 21

Blakely v. Wells,
2006 U.S. App. LEXIS 31031 (2nd Cir. Dec. 13, 2006).....................................10

Briggs v. Women in Need, Inc.,
819 F.Supp.2d 119 (E.D.N.Y. 2011).............................................................10

Campanella v. County of Monroe,
853 F.Supp.2d 364 (W.D.N.Y. 2012)............................................................10

Clarke v. Commc'ns. Workers of Am.,
318 F. Supp. 2d 48 (E.D.N.Y. 2004).............................................................16

Clayton v. International Union,
451 U.S. 679, 101 S. Ct. 2088, 68 L. Ed. 2d 538 (1981)...........................16, 17, 18

Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,
34 F.3d 1148 (2nd Cir. 1994)......................................................................16

DeCintio v. Westchester County Med Ctr.,
821 F. 2nd 111 (2nd Cir. 1987)....................................................................21

DelCostello v. Int'l Bhd. of Teamsters,
462 U.S. 151, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)................................17, 18

Dish Network, LLC. v. World Cable, Inc.,
2012 U.S. Dist. LEXIS 140965 (E.D.N.Y., Sept. 28, 2012).................................9

Douglas v. HIP Centralized Lab. Servs.,
2005 U.S. Dist. LEXIS 8753 (E.D.N.Y. Apr. 29, 2005)....................................22

Gaines v. New York City Transit Auth.,
528 F.Supp.2d 135 (E.D.N.Y. 2007)……………………………………………...…20, 23

Ghirardelli v. McAvey Sales & Serv.,
287 F.Supp.2d 379 (S.D.N.Y. 2003)……………………………………………...….20, 23

Goodman v. Port Auth. of N.Y. & N.J.,
No. 10 Civ. 8352, 2011 U.S. Dist. LEXIS 86010, 2011 WL 3423800
(S.D.N.Y. Aug. 4, 2011)…………………………………………………………..……2

Gordon v. New York City Bd. of Educ.,
232 F.3d 111(2nd Cir. 2000) ………………………………………………………..21

Herr v. Cineplex Odeon Corp.,
1994 U.S. Dist. LEXIS 2539 (S.D.N.Y. Mar. 4, 1994)………………………………...5

Hines v. Anchor Motor Freight,
424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)………………………………….17

Hollander v. American Cyanamid Co.,
895 F.2d 80 (2nd Cir. 1990)……………………………………………………….....20

In re NYSE Specialists Secs. Litig.,
503 F.3d 89 (2nd Cir. 2007)……………………………………………………….....9

In re Puma & Sheet Metal Workers' Int'l Ass'n, Local Union No. 137,
862 F. Supp. 1077 (S.D.N.Y. 1994)………………………………………………….16-17

Johnson v. General Motors,
641 F.2d 1075 (2nd Cir. 1981)…………………………………………………….16, 19

Johnson v. Palma,
931 F.2d 203 (2nd Cir. 1991)……………………………………………20, 23, 24, 25

Maddalone v. Local 17, United Brotherhood of Carpenters,
152 F.3d 178 (2nd Cir. 1998)……………………………………………….16, 18, 19

Martin v. Purolator Courier,
1996 U.S. Dist. LEXIS 22300 (E.D.N.Y. July 30, 1996)………………………...…18, 24

Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,
631 F.3d 57 (2nd Cir. 2011)………………………………………………………9

McMenemy v. City of Rochester,
241 F.3d 279 (2nd Cir. 2001)……………………………………………20, 23, 24, 25

National Labor Relations Board v. S.E. Nichols, Inc.,
862 F.2d 952, 957 (2nd Cir. 1988)………………………………………..…13

Nicholls v. The Brookdale Univ. Hosp. and Medical Ctr.,
2005 U.S. Dist. LEXIS 14144 (E.D.N.Y. 2005)………………………………………17

Nweke v. Prudential Ins. Co. of Am.,
25 F.Supp.2d 203 (S.D.N.Y. 1998)………………………………………….....23

Okoro v. Marriott Int'l,
2008 U.S. Dist. LEXIS 76880 (S.D.N.Y. Sept. 29, 2008)…………………………….20, 23-24

Republic Steel v. Maddox,
379 U.S. 650 (1965)………………………………………………………...…18

Richardson v. New York State Dep't of Correctional Serv.,
180 F.3d 427 (2nd Cir. 1999)………………………………………………..……22

Salahuddin v. Cuomo,
861 F.2d 40 (2nd Cir. 1988)………………………………………………………10

Santo v. Laborers' International Union of North America,
836 F. Supp. 2d 100 (E.D.N.Y. 2011)……………………………………………16, 18

Schermerhorn v. Local 100, Transport Workers Union of America, AFL-CIO,
91 F.3d 316 (2nd Cir 1996)………………………………………………………16

Schiano v. Quality Payroll Systems, Inc.,
445 F.3d 597 (2nd Cir. 2006)…………………………………………………...20

Treglia v. Town of Manlius,
313 F.3d 713 (2nd Cir. 2002)……………………………………………………...22

Vaca v. Sipes,
386 U.S. 171, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)…………………………………11, 17

White v. White Rose Food,
237 F.3d 174 (2nd Cir. 2001)……………………………………………………....2

Wilson v. American Postal Workers Union,
2012 U.S. Dist. LEXIS 125396 (S.D.N.Y. 2012)……………………………...……6, 11, 17

Page(s)

Zinermon v. Burch,
494 U.S. 113, 110 S. Ct. 975,108 L. Ed. 2d 100 (1990)...................................................9

## INTRODUCTION

Plaintiff submits this opposition to Defendant United Federation of Teachers' (hereinafter UFT's) motion to dismiss. Plaintiff asserts that she has alleged more than sufficient facts in the SAC (hereinafter referred to "SAC") to make out claims that: (1) Defendant UFT breached its duty to Plaintiff of fair representation breach, in violation of the National Labor Relations Act/Labor Management Relations Act; and (2) Defendant UFT retaliated against Plaintiff, in violation of the New York State Executive Law, Section 296, et al. ("New York State Human Rights Law") and the New York City Administrative Code, Section 8, et al. ("New York City Human Rights Law"), for filing a sex discrimination and retaliation lawsuit against Defendant United Cerebral Palsy of New York City, Inc. (hereinafter "UCP") and for engaging in affirmative activities in furtherance and in prosecution of this lawsuit. Plaintiff has also alleged sufficient facts to establish claims that: Defendant UCP breached the Collective Bargaining Agreement between UCP and UFT, of which Plaintiff is a beneficiary, in violation of the Labor Management Relations Act; and Defendant UCP retaliated against Plaintiff – in violation of the New York State Human Rights Law and the New York City Human Rights Law – for making complaints against UCP of sex discrimination and of retaliation for engaging in protected activity. However, the claims against Defendant UCP will be addressed in Plaintiff's opposition papers to Defendant UCP's motion to dismiss.

## STATEMENT OF FACTS

Plaintiff incorporates by reference the factual allegations and claims pled in the SAC filed in this action on December 27, 2012.

<u>**ARGUMENT**</u>

<u>**Plaintiff Has Pled Sufficient Facts to Make Out Claims that Defendant UFT Breached Its Duty of Fair Representation of Plaintiff in Violation of the NLRA/LMRA**</u>

In order to make out a claim that a union breached its duty of fair representation, the plaintiff must allege sufficient facts to show that the union's conduct was "arbitrary, discriminatory or in bad faith." <u>Goodman v. Port Auth. of N.Y. & N.J.</u>, No. 10 Civ. 8352, 2011 U.S. Dist. LEXIS 86010, 2011 WL 3423800, at *6 (S.D.N.Y. Aug. 4, 2011) (citing <u>Airline Pilots Ass'n, Int'l Union v. O'Neill</u>, 499 U.S. 65, 71 (1991) (internal quotations and citations omitted). The plaintiff must also plead enough facts to show that there was a causal connection between the union's wrongful conduct and his/her injuries. *See* <u>Goodman v. Port Auth. of N.Y. & N.J.</u>, No. 10 Civ. 8352, 2011 U.S. Dist. LEXIS 86010, 2011 WL 3423800, at *6 (S.D.N.Y. Aug. 4, 2011) (*citing* <u>White v. White Rose Food</u>, 237 F.3d 174, 179 (2nd Cir. 2001)).

As demonstrated below, Defendant UFT engaged in a persistent pattern of actively sabotaging Plaintiff, siding with and advocating for Defendant UCP's interests rather than Plaintiff's, facilitating and assisting further breaches of the Collective Bargaining Agreement and further retaliatory actions by Defendant UCP, and treating Plaintiff less favorably than other union members. Defendant UFT's acts and omissions, whether viewed individually or cumulatively, amount to breaches of the fair duty of representation and caused Plaintiff to sustain lost wages as well as other damages.

**(1)** <u>**Defendant UFT's Actions at the November 16, 2011 Meeting Constituted A Breach of the Duty to Fairly Represent, Violation of the NLRA and LMRA**</u>

Defendant UFT repeatedly failed to represent Plaintiff in violation of the NLRA and LMRA and actually sabotaged and undermined Plaintiff's interests and instead sided with

Defendant UCP, advocated for UCP's interests, and facilitated Defendant UCP's breaches of the Collective Bargaining Agreement and UCP's retaliatory actions against Plaintiff.

On November 16, 2011, a meeting was held among Defendant UFT, Defendant UCP, and Plaintiff regarding the adverse transfer of Plaintiff out of the Landings site to the E. 51st Street site in late October/early November 2011. The transfer was adverse because the transfer resulted in a 10-hour reduction in Plaintiff's hours and therefore a reduction in her wages. The transfer was also adverse because it occurred under circumstances that made it appear that Plaintiff had done something wrong and was being punished. The transfer occurred right after Defendant UCP had investigated false allegations that Plaintiff said a consumer should burn to death. Defendant UCP informed Plaintiff that the allegations were determined to be unfounded but right after the investigation concluded and after Plaintiff had been forced to stay home during the pendency of the investigation, Plaintiff was transferred making it appear as though the transfer was a result of the allegations and as though the allegations had been determined to be true. This perception was especially likely because two other co-workers who were also the target of allegations concerning the same consumer were not transferred out of the Landings, in addition to not having been required to stay home during UCP's investigation into the allegations against them. *See* SAC, ¶ 11.

At the meeting, Olivia Wint of UFT made a surprise appearance and took over the "representation" of Plaintiff, although she did not actually represent Plaintiff. Ms. Wint admitted to Plaintiff that she was there because UCP wanted her to intervene, which in turn implied that she was there to comply with UCP's interests and she acted in a way that was consistent with that implication. *See* SAC, ¶ 15. Her presence there was an anomaly as Plaintiff had not had any significant interaction with her for a couple of years. *See id.* Ms. Wint acted in

a way that was sabotaging of and detrimental to Plaintiff and therefore rose to the level of egregious conduct. *See* SAC, ¶ 16. UCP had clearly breached the Collective Bargaining Agreement by transferring Plaintiff out of the Landings (*see* SAC, ¶ 13) and Ms. Wint did not advocate at all, not at all, for the correction the breach, which would involve returning Plaintiff to the Landings at the same schedule that she had before (*see* SAC, ¶ 16). In fact, Ms. Wint did not even: mention the fact that UCP had breached the Collective Bargaining Agreement; question or challenge UCP in any way regarding the adverse transfer of Plaintiff from the Landings to the E. 51st Street site; intimate that UCP had done anything wrong by transferring Plaintiff from the Landings; or raise the prospect of returning Plaintiff to the Landings. Instead, Ms. Wint advocated for the furtherance of the breach – yet another transfer that would not only be adverse to Plaintiff but be retaliatory against Plaintiff for her protected activity. She angrily told Plaintiff that she had to accept another transfer or stay home without pay. *See id.* The further transfer of Plaintiff was being couched by Defendant UCP as another punishment, for Patricia Traynor of UCP made the baseless claim at the meeting that the consumers at the E. 51st Street (the site to which she was transferred from the Landings in violation of the contract) did not like Plaintiff. Ms. Wint did not ask Ms. Traynor to support her allegation or even question her allegation. Patricia Traynor and Everett Watts also falsely represented that they had no other placement options in Brooklyn, which Ms. Wint also did not question or challenge. Instead, Ms. Wint kept angrily repeating that Plaintiff had to take one of the two aforementioned adverse transfer options or stay home without pay. Ms. Wint was facilitating another baseless punishment of Plaintiff by Defendant UCP. *See id.*

Ms. Wint actively propounded something that UCP wanted to do that was against Plaintiff's interests and that was clearly detrimental and harmful to Plaintiff and did not

propound anything that was beneficial or fair to Plaintiff. For all intents and purposes, Ms. Wint acted as Defendant UCP's representative and advocate at the meeting, not Plaintiff's. The fact that Ms. Wint was failing to represent Plaintiff, was acting in a way that was arbitrary and discriminatory, and was advocating for something that was detrimental to Plaintiff was underscored by the questions and statements made by Thara Boucicault, who was present at the meeting and a representative of the same union as Ms. Wint. Thara Boucicault asked at the meeting why they were all trying to send Plaintiff to another borough and sent a text to Plaintiff during the meeting not to take the transfer option to the assignment in Brooklyn, as the work there was exceptionally grueling. *See id.*

Instead of trying to convince UCP to correct the breach, Ms. Wint's actions would have only encouraged and spurred UCP on in its breaches of the contract and its efforts to retaliate against Plaintiff and therefore greatly decrease the chances of a positive resolution for Plaintiff. Plaintiff alleged sufficient facts to demonstrate that Ms. Wint intentionally sabotaged and undermined Plaintiff's interests at the meeting and engaged in actions that were calculated to harm Plaintiff. As stated above, she admitted to Plaintiff upon arrival that she was there at the adversary UCP's request. Ms. Wint helped UCP to put Plaintiff in a position where returning to work would mean Plaintiff would have to endure undue hardship, as Ms. Wint actively propounded two adverse options to Plaintiff, represented those as the only options, and failed to advocate for Plaintiff's return to the Landings at the same schedule.

Ms. Wint demonstrated great hostility toward Plaintiff and her conduct at the meeting intentionally undermined Plaintiff's interests and the acquisition of a positive resolution for Plaintiff. Similarly, in Herr v. Cineplex Odeon Corp., 1994 U.S. Dist. LEXIS 2539 at *18-20 (S.D.N.Y. Mar. 4, 1994), the plaintiff alleged that union officials acted hostile toward him at

three general union membership meetings and frustrated his attempts to convince the members to overturn the executive board's decision not to take his case to arbitration. The Southern District of New York held that the union officials' hostile actions at the meetings amounted to a breach of the duty of fair representation.

Furthermore, Ms. Wint did not assist Plaintiff in having her grievance addressed at the meeting (which was the adverse, unjustified transfer from the Landings to the E. 51st Street site). Instead, Ms. Wint actively cooperated with UCP's management to perpetuate the breach of the Collective Bargaining Agreement and UCP's retaliatory and adverse actions against Plaintiff. In Wilson v. American Postal Workers Union, 2012 U.S. Dist. LEXIS 125396 at *12-13 (S.D.N.Y. 2012), the Southern District of New York held that the plaintiff had adequately pled a breach of the duty of fair representation where the union did not assist the plaintiff in his grievance and instead cooperated with management to thwart his promotion for improper reasons. As demonstrated below, the union's failure to assist Plaintiff in her grievance (which was her wrongful, adverse, unjustified removal from the Landings) continued from thereon.

Defendant UFT in its Memorandum of Law claims that Plaintiff's allegations illustrate that the UFT conducted at least a minimal investigation into UCP's attempts to transfer Plaintiff's assignment and that, contrary to Plaintiff's claims, the UFT acted to assist Plaintiff in escaping an undesirable and challenging assignment because at the November 16th meeting, Plaintiff's UFT Chapter Leader Thara Boucicault questioned why UCP was attempting to send Plaintiff to another borough and Ms. Boucicault sent a text message to her during the meeting not to take the assignment in Brooklyn, as the work there was exceptionally grueling. However, Plaintiff makes it clear in the SAC that it was not Ms. Boucicault who was leading UFT's "representation" of her

at the meeting, but Ms. Wint and Ms. Wint actively sabotaged Plaintiff at the meeting. *See* SAC, ¶¶ 15-16.

Defendant UFT also claims in its moving papers that Plaintiff contradicted herself when she averred that Olivia Wint "took over the 'representation' of her at the [November 16th] meeting" and also "failed to represent Plaintiff at the meeting." However, the word "representation" was put in quotation marks (*see* SAC, ¶ 15) and the placement of it in quotation marks conveyed that it was not actual representation, but purported representation. Defendant UFT cited the word with the quotation marks in its moving papers but completely ignored the significance of it being in quotation marks.

The November 16th meeting could not be considered an "Informal Resolution" pursuant to the Grievance and Arbitration Procedure set forth in the Collective Bargaining Agreement, Article 29(B), as Defendant UFT avers, because it was not geared toward resolving Plaintiff's complaint. Instead, it was geared toward the perpetuation and furtherance of Defendant UCP's breach of the Collective Bargaining Agreement. UFT did not even raise the prospect of returning Plaintiff to the Landings, from which she was transferred in violation of the Collective Bargaining Agreement. The offering of the two transfer options to Plaintiff at the meeting could not be considered a resolution, by any stretch of the imagination, because they were both adverse to Plaintiff, they would have been further breaches of the Collectively Bargaining Agreement, and they were being couched as further punishment as Patricia Traynor made the baseless claim that the consumers at the E. 51st Street (the site to which she was transferred from the Landings in violation of the contract) did not like her, which Defendant UFT did not question or challenge in any way. *See* SAC, ¶¶ 15-16.

**(2) Defendant UFT's Failure to File a Grievance Regarding the Transfer from the Landings Until Mid-December 2011 and Its Handling of the Grievance Constituted A Breach of the Duty to Fairly Represent Under the NLRA and LMRA**

Plaintiff alleges sufficient facts to show that UFT's failure to file a grievance until mid-December 2011 was not an act of mere negligence as Defendant UFT claims in its motion to dismiss, but was an intentional, arbitrary, and discriminatory act, for at the same time that UFT was refusing and failing to file a grievance on behalf of Plaintiff, it took affirmative actions in blatant defense of UCP and in facilitation of yet another breach of the contract and yet another retaliatory action by Defendant UCP – another adverse transfer. *See* SAC, ¶¶ 14-19. Plaintiff began asking Defendant UFT to file a grievance regarding the transfer from the Landings in early November 2011 right after the transfer happened. *See* SAC, ¶ 14. Defendant UFT did not file the grievance until mid-December 2011 after Plaintiff had already been home without pay for a month. During the period between early November 2011 and mid-December 2011, Defendant UFT sent a representative specifically requested by Defendant UCP to take over the "representation" of Plaintiff at a meeting to discuss the transfer, that representative actively sabotaged Plaintiff at the meeting and tried to facilitate and assist further breaches of the contract and efforts to retaliate against Plaintiff by Defendant UCP, and then when Plaintiff repeatedly contacted UFT after the meeting, she was told that her only choice was to accept another adverse transfer by Defendant UCP. *See* SAC, ¶¶ 15-19. Therefore, in the intervening period, Defendant UFT repeatedly sided with Defendant UCP and against Plaintiff, which in turn shows that its delay in filing the grievance was intended to harm and prejudice Plaintiff and not merely negligent. This was not a case in which the union was just passively failing to file a grievance. During the delay period, the union was actively advocating for, siding with, and advancing the cause of the adversary – Defendant UCP.

Defendant UFT claims that Plaintiff did not allege that she requested UFT to grieve the transfer from the Landings to East 51st Street through any of the repeated contacts that she had with UFT after the November 16th meeting. On the contrary, Plaintiff asserts in the SAC that during these repeated contacts after the November 16th meeting, "UFT indicated an unwillingness to grieve UCP's adverse transfer of Plaintiff from the Landings to E. 51st Street or UCP's efforts to again adversely transfer Plaintiff" which implies that Plaintiff spoke about this issue during these repeated contacts after the meeting. *See* SAC, ¶ 19. When adjudicating a motion to dismiss, all reasonable inferences from the facts pleaded should be drawn in the plaintiff's favor. *See* Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2nd Cir. 2011); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2nd Cir. 2007); Dish Network, LLC. v. World Cable, Inc., 2012 U.S. Dist. LEXIS 140965 at *18 (E.D.N.Y., Sept. 28, 2012). Furthermore, as mentioned above, Plaintiff also alleged that before the November 16, 2011 meeting, she asked Defendant UFT to file a grievance on the transfer from the Landings to the E. 51st Street site and that Defendant UFT refused. *See* SAC, ¶ 14. In addition, Defendant UFT states in its moving papers that Plaintiff does not specify the dates on which she contacted UFT after the November 16th meeting, but it is implied from the narrative in the complaint that she contacted UFT between the meeting and when the grievance was filed in mid-December 2011. *See* SAC, ¶¶ 19-20.

Defendant UFT also claims that Plaintiff's allegation that "[u]pon Plaintiff's information and belief, UFT had filed grievances for other union members on issues that were less grave and serious and that had less of an impact on those members" was a conclusory and self-serving statement. Plaintiff is not required to give specific examples of each assertion in the complaint.

The Federal Rules of Civil and Procedure only "**require** that a complaint 'contain…a **short** and **plain statement** of the claim showing that the pleader is entitled to relief.'" Blakely v. Wells, 2006 U.S. App. LEXIS 31031 at *20 (2nd Cir. Dec. 13, 2006) (quoting FRCP 8(a)(2)). *See also,* Salahuddin v. Cuomo, 861 F.2d 40, 41-42 (2nd Cir. 1988). "[A] plaintiff need not plead specific, admissible evidence in support of a claim ...." Campanella v. County of Monroe, 853 F.Supp.2d 364, 378 (W.D.N.Y.2012). *See* Briggs v. Women in Need, Inc., 819 F.Supp.2d 119, 124-25 (E.D.N.Y. 2011). A conclusory statement would have been if Plaintiff had just said that the UFT treated her differently than other union members.

Although Defendant UFT did file a grievance in mid-December 2011, Plaintiff alleged sufficient facts to show that it filed this grievance only for show (perhaps in an attempt to avoid an LMRA/NLRA claim) and not with the intent to fairly and effectively prosecute it. *See* SAC, ¶ 20.

As Plaintiff alleges in the SAC, Defendant UFT did not actually prosecute the grievance at the Step One meeting. *See* SAC, ¶ 21. Defendant UFT claims that Plaintiff's claim that the grievance was not processed is belied by the fact that she was offered a few options for placement by UCP at the Step One meeting (which were all for fewer hours than Plaintiff had worked at the Landings). However, the purported grievance filed by Defendant UFT was regarding the removal of Plaintiff from the Landings site and the placement of her on an unpaid leave of absence following an unsubstantiated allegation of consumer abuse and yet Defendant UFT did not even discuss at the Step One meeting the substance of grievance that it filed or the ways in which UCP had violated the Collective Bargaining Agreement. Defendant UFT did not even try to advocate for Plaintiff to be reinstated to the Landings, the removal from which was the substance of the purported grievance. *See id.* UFT behaved as if there was no grievance, as

if Defendant UCP had done nothing wrong, as if the removal from the Landings was not a violation of the contract, as if placement at another site was acceptable. *See id.* Furthermore, the options for placement offered were all for fewer hours than she had worked at the Landings, which in turn would cause Plaintiff to lose income. *See id.* Defendant UFT's actions and omissions willful ignorance of a meritorious grievance without justification and a union may not arbitrarily ignore a meritorious grievance. *See* Wilson v. American Postal Workers Union, 2012 U.S. Dist. LEXIS 125396 at *11-12 (S.D.N.Y. 2012) (*citing* Vaca v. Sipes, 386 U.S. 171, 191, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967)).

In an effort to mitigate her damages, Plaintiff tried to accept one of the offers, even though they were adverse. *See* SAC, ¶ 21.

Defendant UFT claims in its moving papers that Plaintiff has failed to allege any facts establishing her entitlement, pursuant to the CBA, to reinstatement to the Landings. Defendant UFT points to the fact that Plaintiff alleges that Defendant UCP informed her that the consumer-related allegations against her had been determined to be "unfounded" when pursuant to Appendix B to the CBA, which outlines the Investigation Process, investigations into allegations of client abuse result in only three potential outcomes: "substantiated", "false", or "inconclusive". Defendant UFT argues that Plaintiff has failed to allege that UCP determined that the allegations lodged against her were "false". Defendant UFT makes a futile appeal to semantics in its argument. A determination of "unfounded" is the substantial equivalent of a determination that an allegation is baseless or "false". By Defendant UFT's own admission in its moving papers, when an employee is the target of allegations determined to be "false" (which is the substantial equivalent of "unfounded"), that employee is guaranteed reinstatement under the CBA.

Furthermore, Defendant UFT states that Article 27(D) of the CBA affords UCP the right to transfer employees from their work site to other work sites "for reasons of agency or consumer needs", provided that such transfers are "neither arbitrary and capricious" and claims that Plaintiff fails to allege that UCP's transfer and/or attempted transfer was not based upon an agency or consumer need. However, Plaintiff explicitly asserted in her SAC that the transfer from the Landings site to the East 51st Street site and attempted transfer from the E. 51st Street site to yet another site violated Article 27(D) of the CBA which would incorporate everything in Article 27(D). Furthermore, item (2) of that Article 27 conveys that an employee must not be involuntarily transferred from one work site to another ahead of less senior qualified employees in the title and Plaintiff alleged in the SAC that she was transferred ahead of less senior employees. *See* SAC, ¶ 13.

### (3) **Defendant UFT's Conditioning of Plaintiff's Return to Work on Plaintiff Not Holding Defendant UFT Liable for Its Actions and Omissions and Waiving All Potential Claims Against UFT Constituted A Failure to Fairly Represent Under the NLRA and LMRA**

As indicated above, at the Step One meeting, Defendant UCP only offered options for placements that were fewer hours than Plaintiff had worked at the Landings. Having been out of work with no pay for about five months at that point and having dealt with a union that failed and refused to advocate for her reinstatement to the Landings, Plaintiff tried to accept one of the offers in order to mitigate her damages. *See* SAC, ¶ 21. UFT presented her with an agreement among Plaintiff, UFT, and UCP that among other things, contained statements aimed at protecting UFT from any liability. *See id.* The agreement contained the statement, "Ms. Grant agrees that she has been fully and fairly represented by the UFT with respect to the negotiation and execution of this Agreement." UFT represented that if Plaintiff wanted the placement, she

had to sign the agreement as is. Plaintiff could not and did not sign the agreement as is and therefore was precluded from returning to work. See SAC, ¶ 21.

Defendant UFT was supposed to be acting as Plaintiff's representative and in Plaintiff's interests and yet it was requiring Plaintiff to waive her legal rights to hold Defendant UFT liable for its actions in order to return to work. *See id.* It was conditioning her return to work on her not holding UFT liable for anything and on forfeiting her rights under the NLRA/LMRA to file a complaint against UFT for its representation. The NLRA/LMRA prohibit actions that chill or deter union members from exercising their rights under the NLRA/LMRA. *See eg.,* National Labor Relations Board v. S.E. Nichols, Inc., 862 F.2d 952, 957 (2nd Cir. 1988) (retaliation against union members for exercising their rights under the NLRA/LMRA is prohibited). Yet, Defendant UFT was trying to blackmail Plaintiff into waiving her right under the NLRA/LMRA to hold Defendant UFT liable for unfair representation by basically stating that if she did not waive her right, she could not return to work and return to earning a living. This was a further failure to fairly represent Plaintiff and a further violation of the NLRA/LMRA. Placing such a condition on Plaintiff was extremely unfair and unjust and Plaintiff should not have been expected to accept that condition. Defendant UFT, not Plaintiff, is liable and responsible for the lost wages that Plaintiff continued to sustain after she declined to sign the agreement because the condition that Defendant UFT sought to impose on Plaintiff in order for her to return to work was unreasonable, unfair, unjust, and unwarranted. Ironically, Defendant UCP, the adversary, did not have a clause like this in the agreement, but UFT, which was supposed to be Plaintiff's representative and supposed to act in Plaintiff's interests, did.

It was bad enough that Defendant UFT had not prosecuted the grievance and had not advocated for the correction of Defendant UFT's breach of the contract and retaliatory actions

against Plaintiff. Now Plaintiff was trying to take one of the substandard, adverse options that Defendant UFT's lack of representation led to just so that she could start earning some kind of living again and Defendant UFT was even placing an unwarranted obstacle in the way of doing that.

In addition, Defendant UFT actually placed this clause in a contract in which the employer UCP was supposed to be the adversary and UFT was supposed to be acting on behalf of Plaintiff and as Plaintiff's representative. The union portrayed itself in the contract as a separate and adverse party to Plaintiff.

**(4) Plaintiff Timely and Adequately Pled a Claim that Defendant UFT Breached The Duty of Fair Representation By Not Mandating that UCP's Step Two Designee Explain His Reasons in Writing for Denying Grievances Pursuant to the Collective Bargaining Agreement**

Plaintiff discovered on May 30, 2012 during a deposition of Alan Seiler, who was the Director of Human Resources at UCP for many years up until early 2012 and UCP's Designee at Step Two, that he never put his reasons in writing for denying grievances of disciplinary actions and that UFT did not complain about or challenge his failure to do that even though his failure to do so was a violation of the CBA. *See* SAC, ¶ 22. Plaintiff is claiming that this was a breach of Defendant's duty of fair representation for the following reasons. Plaintiff timely pled this breach as she became aware of it on May 30, 2012 and she included this claim in an Amended Complaint filed on July 27, 2012, which was within six months of becoming aware of the breach. *See* Civil Docket Sheet, annexed to the Affirmation of Kathy A. Polias, Attorney-at-Law, as Exhibit 1. This failure to represent severely prejudiced and disadvantaged Plaintiff in the following ways. Firstly, UFT's failure to enforce the contract and require that Mr. Seiler justify and substantiate his negative decisions in writing allowed Mr. Seiler and UCP in general to act with little accountability and made it very easy for Mr. Seiler to deny grievances for no

legitimate reason. There was virtually no paper trail of the happenings at the Step Two meeting. The proceedings at the Step Two meetings were not recorded or transcribed and Mr. Seiler did not put his reasons in writing for denying grievances as he was required to do under the CBA. UFT failed to take notice of the fact that Mr. Seiler was hardly a disinterested decision-maker, as he was deciding grievances filed against his own employer. *See* SAC, ¶ 23.

Secondly, UFT"s failure to enforce the contract and require that Mr. Seiler justify and substantiate his negative decisions in writing would have inhibited UFT from being able to fairly and properly evaluate whether to take grievances denied by Mr. Seiler to arbitration. Upon information and belief, the UFT employees/agents involved in making the decisions about whether to take grievances to arbitration, who included individuals who were not present at the Step Two meeting, would give weight to Mr. Seiler's decision without knowing or caring to know the reasons or rationales for his decision. As mentioned above, Mr. Seiler's reasons or rationales were particularly important because he could not be considered a disinterested or impartial decision-maker. UFT had in fact refused to take grievances concerning Plaintiff to arbitration after negative decisions by Mr. Seiler at Step Two that he did not explain. These grievances included: a grievance filed in July 2009 regarding UCP's adverse transfer of Plaintiff from one residence in the Landings site/unit to another; a grievance filed in March 2010 regarding a final written warning issued by UCP to Plaintiff of insubordination which UFT informed Plaintiff in August 2011 it would not take to arbitration; upon information and belief, a grievance filed in March 2010 regarding a second written warning issued to Plaintiff by UCP of misconduct; and upon information and belief, a grievance filed in December 2009 regarding a first written warning issued by UCP to Plaintiff of insubordination and misconduct. *See* SAC, ¶ 24.

Defendant UFT's failure to complain about Alan Seiler's failure to put his reasons in writing and UFT's failure to enforce the contract was an intentional act because the union was aware what the contract said and Mr. Seiler was committing this violation of the contract on grievances that the union was prosecuting for many years. Allowing Mr. Seiler to continue to do this for such a long period of time when it was obviously prejudicial and detrimental to union members was an act of bad faith on the union's part.

### (5) **Plaintiff Was Not Required To Plead An Exhaustion of Administrative Remedies**

It is true that Plaintiff did not plead in the Second Amended Complaint what if anything occurred after the Step One hearing. In actuality, Defendant UFT sent Plaintiff a letter on May 24, 2012, indicating that her Step Two grievance was considered abandoned, and the grievance was closed as of May 23, 2012. *See* copy of letter, attached to Polias Affirmation as Exhibit 2. Even if this is not considered because it was not pled in the SAC and even if the SAC is construed as Plaintiff having abandoned the process after Step One, Plaintiff did not have to allege that anything happened past the Step One meeting. Plaintiff should not be required to show exhaustion of the grievance process for the following reasons.

The exhaustion requirement is not absolute, but rather is discretionary with the court. *See* Clayton v. International Union, 451 U.S. 679, 689, 101 S. Ct. 2088, 2095, 68 L. Ed. 2d 538 (1981); Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am., 152 F.3d 178, 186 (2nd Cir. 1998); Schermerhorn v. Local 100, Transport Workers Union of America, AFL-CIO, 91 F.3d 316 (2nd Cir. 1996); Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154 (2nd Cir.1994); Johnson v. General Motors, 641 F.2d 1075, 1078 (2nd Cir. 1981); Santo v. Laborers' International Union of North America, 836 F. Supp. 2d 100, 111-112 (E.D.N.Y. 2011); Clarke v. Commc'ns. Workers of Am., 318 F. Supp. 2d 48 (E.D.N.Y. 2004); In

re Puma & Sheet Metal Workers' Int'l Ass'n, Local Union No. 137, 862 F. Supp. 1077, 1080

(S.D.N.Y. 1994). The U.S. Supreme Court has held that courts should consider three factors in

exercising this discretion:

> [F]irst, whether union officials are so hostile to the employee that he could not
> hope to obtain a fair hearing on his claim; second, whether the internal union
> appeals procedures would be inadequate either to reactivate the employee's
> grievance or to award him the full relief he seeks under § 301; and third, whether
> exhaustion of internal procedures would unreasonably delay the employee's
> opportunity to obtain a judicial hearing on the merits of his claim.
> Clayton, 451 U.S. at 689, 101 S. Ct. at 2095.

"If any of these factors are found to exist, the court may properly excuse the employee's

failure to exhaust." *Id.*

Defendant UFT incorrectly cited Clayton, as well as DelCostello v. Teamsters, 462 U.S.

151 (1983) in its Memorandum of Law to support its assertion that the plaintiff must always

exhaust the grievance procedure. As indicated above, in Clayton, the U.S. Supreme Court held

that the requirement was not absolute and was a matter of discretion by the Court. Furthermore,

in DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163, 103 S. Ct. 2281, 76 L. Ed. 2d 476

(1983), the U.S. Supreme Court cited Clayton for the proposition that exhaustion is not always

required and then went on to state that in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d

842 (1967) and Hines v. Anchor Motor Freight, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231

(1976):

> [The Court] recognized that [the exhaustion] rule works an unacceptable injustice when
> the union representing the employee in the grievance/arbitration procedure acts in such a
> discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair
> representation. In such an instance, an employee may bring suit against both the
> employer and the union, notwithstanding the outcome or finality of the grievance or
> arbitration proceeding.
> DelCostello, 462 U.S. at 163 [*quoted in* Wilson v. American Postal Workers Union, 2012
> U.S. Dist. LEXIS 125396 at *12-13 (S.D.N.Y. 2012); Nicholls v. The Brookdale Univ.
> Hosp. and Medical Ctr., 2005 U.S. Dist. LEXIS 14144 at *14 (E.D.N.Y. 2005)].

This holding relates to the first factor articulated in Clayton, 451 U.S. at 689, 101 S. Ct. at 2095.

The aforementioned U.S. Supreme Court cases are more recent than Republic Steel v. Maddox, 379 U.S. 650 (1965), which is the main case that Defendant UFT cites for the proposition that exhaustion is always required.

The union has the burden of establishing that its internal procedures meet the requirements articulated in Clayton, 451 U.S. at 689, 101 S. Ct. at 2095. *See* Maddalone, 152 F.3d at 186; Santo, 836 F. Supp.2d at 112. However, Plaintiff addresses each one of the factors articulated in Clayton herein.

Plaintiff has alleged enough facts to meet the first Clayton factor, to which the holding in DelCostello, 462 U.S. at 163, relates. As demonstrated in detail above, the union repeatedly treated Plaintiff in such a hostile, discriminatory, and arbitrary way that Plaintiff would not have received a fair hearing on her grievance and any further attempts by Plaintiff to prosecute her grievance would have been futile. The union repeatedly sided with and advocated for the interests of UCP, rather than for Plaintiff's interests, and actually facilitated further breaches by UCP of the Collective Bargaining Agreement and further efforts by UCP to retaliate against Plaintiff.

Plaintiff also meets the second Clayton factor, as the union grievance procedure as described in Article 29 of the Collective Bargaining Agreement (which is attached to the SAC) does not appear to afford the grievant the opportunity to recover the monetary damages that are available under the NLRA/LMRA and that Plaintiff is seeking in this lawsuit – namely general and compensatory damages and lost wages. *See* pages 21-23 of the Collective Bargaining Agreement attached to the SAC. Therefore, the grievance procedure could not have fully

redressed Plaintiff and exhaustion of the procedure was not required. *See* <u>Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.</u>, 152 F.3d 178, 187 (2nd Cir. 1998) (holding that exhaustion of the grievance procedure was not required because the union failed to establish that its grievance procedures could have fully redressed the plaintiff and provided her with adequate relief as plaintiff was seeking both compensatory and punitive damages under the LMRDA and the union had not produced any evidence as to what remedies were available under its procedures); <u>Barbara v. New York Stock Exchange, Inc.</u>, 99 F.3d 49, 57 (2nd Cir.1996) (refusing to require exhaustion of the grievance procedure where the plaintiff sought primarily monetary damages and administrative remedies could not provide such relief); <u>Johnson v. General Motors</u>, 641 F.2d 1075, 1078 (2nd Cir. 1981) ("Adequacy . . . must be demonstrated by showing that the disgruntled employee can be fully redressed for his injuries . . . .").

Furthermore, Plaintiff meets the third <u>Clayton</u> factor, as the exhaustion of internal procedures would have reasonably delayed her opportunity to obtain a judicial hearing on the merits of her claim. The various steps of the grievance procedure were occurring very slowly for Plaintiff. Defendant UFT did not file the grievance until mid-December 2011 after Plaintiff had already been out of work and without pay for one month. *See* SAC, ¶ 20. The Step One meeting did not occur until April 2011 after Plaintiff had already been home without pay for more than five months. *See id.* Furthermore, Defendant UFT demonstrated that it would not permit a settlement of the matter without Plaintiff agreeing to waive any claims that she had against Defendant UFT and to not hold Defendant UFT liable for anything. *See* SAC, ¶ 20.

**<u>Plaintiff Has Alleged Sufficient Facts to Make Out Claims Under the NYSHRL and NYCHRL That Defendant UFT Retaliated Against Plaintiff for Complaining that Defendant UCP Discriminated Against Her on the Basis of Her Sex and Retaliated Against Her for Her Protected Activity</u>**

Plaintiff claims that Defendant UFT retaliated against her for her protected activity of filing and prosecuting a sex discrimination and retaliation lawsuit against UCP.

Even though Plaintiff did not complain about Defendant UFT in the lawsuit and the underlying protected activity was not targeted at Defendant UFT, it is certainly plausible that Defendant UFT retaliated against Plaintiff for this activity. As detailed more below, courts have held that an entity could be considered to have retaliated against a plaintiff and have had a retaliatory motive against that plaintiff for the plaintiff's protected activity against another entity. In other words, the retaliator and the entity against which the plaintiff directed his/her protected activity need not be the same. *See* McMenemy v. City of Rochester, 241 F.3d 279, 283-284 (2nd Cir. 2001); Johnson v. Palma, 931 F.2d 203, 208 (2nd Cir., 1991); Okoro v. Marriott Int'l, 2008 U.S. Dist. LEXIS 76880 at *18 (ftn. 12) (S.D.N.Y. Sept. 29, 2008); Ghirardelli v. McAvey Sales & Serv., 287 F.Supp.2d 379, 387 (S.D.N.Y. 2003); Gaines v. New York City Transit Auth., 528 F.Supp.2d 135, 149 (E.D.N.Y. 2007); Martin v. Purolator Courier, 1996 U.S. Dist. LEXIS 22300 at *24 (E.D.N.Y. July 30, 1996).

Under Title VII, to make out a *prima facie* case of retaliation, a plaintiff must show participation in protected activity known to the defendant, an adverse employment action, and a causal connection between the protected activity and the adverse employment action. *See* McMenemy v. City of Rochester, 241 F.3d at 282 (*citing* Gordon v. New York City Bd. of Educ., 232 F.3d 111, 113 (2nd Cir. 2000)); Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2nd Cir. 1990). Retaliation claims under the New York State Human Rights Law are analyzed according to virtually the same standard as retaliation claims under Title VII. *See* Birkholz v. The City of New York, 2012 U.S. Dist. LEXIS 22445 at *39-40 (E.D.N.Y. Feb. 22, 2012) (*citing* Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 609 (2nd Cir. 2006)).

Claims under the New York City Human Rights Law are "slightly more solicitous of retaliation claims than federal and state law because, rather than requiring a plaintiff to show an 'adverse employment action,' it only requires him to show that something happened that was 'reasonably likely to deter a person from engaging in protected activity.'" Birkholz, 2012 U.S. Dist. LEXIS 22445 at *40.

A causal connection may be established either "indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." DeCintio v. Westchester County Med Ctr., 821 F.2nd 111 (2nd Cir. 1987). *See also*, Gordon v. New York City Bd of Educ., 232 F.3d 111, 117 (2nd Cir. 2000).

Plaintiff has pled sufficient facts in the SAC to establish all the elements necessary to make out a *prima facie* case of retaliation by Defendant UFT for her sex discrimination and retaliation complaint against Defendant UCP.

Plaintiff has alleged sufficient facts to demonstrate participation in a protected activity. She has alleged that she filed a lawsuit against Defendant UCP in the United States District Court, Southern District of New York in January 2011, in which she asserted claims against UCP of sex discrimination and retaliation for complaining about sex discrimination and for complaining about retaliation for engaging in protected activity and that in late 2011/early 2012, she took affirmative actions in furtherance of and in prosecution of the lawsuit. "Courts have held that such affirmative activities as requesting a right to sue letter from the EEOC, notifying co-workers that they might be called to testify, and serving deposition notices on the opposing party meet the 'relatively low threshold' required to satisfy the requirement that the Plaintiff

have engaged in a protected activity." Douglas v. HIP Centralized Lab. Servs., 2005 U.S. Dist. LEXIS 8753 at *13-14 (E.D.N.Y. Apr. 29, 2005) (citing cases). *See* Treglia v. Town of Manlius, 313 F.3d 713, 721 (2nd Cir. 2002) (the plaintiff not only engaged in a protected activity by filing administrative charges with the EEOC and the NYDHR, but also by submitting a witness list to NYDHR and notifying co-workers that they might be contacted); Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 427, 447 (2nd Cir. 1999) (the plaintiff engaged in protected activity by serving deposition notices in her racially hostile work environment lawsuit).

Plaintiff has pled such affirmative activities as appearing at the Initial Conference in the Southern District case in October 2011, and between October 2011 and April 2012 when the Step One meeting on the grievance occurred, conducting discovery and otherwise prosecuting her case, including but not limited to filing and briefing a motion to amend the complaint in that case to add claims and to add Everett Watts and other UCP supervisors as defendants in that case. *See* SAC, ¶¶ 12, 19, 20.

Plaintiff has alleged sufficient facts to show knowledge by Defendant UFT of her protected activities. She indicates that she had discussed her State Division of Human Rights complaint against UCP with her UFT Chapter Leader Thara Boucicault and that upon information and belief, UCP employees told UFT employees about her lawsuit against Defendant UCP. *See* SAC, ¶ 14. In addition, although this fact was not directly alleged in the Complaint, it should be reasonably inferred from her allegation that she filed and was prosecuting a discrimination and retaliation lawsuit against Defendant UCP in the Southern District of New York, that the complaint, as well as other documents in the case, were matters of public record, and therefore that Defendant UFT could become aware of them in that way.

Plaintiff has alleged sufficient facts to show an adverse action by Defendant UFT. The Second Circuit has specifically held that adverse employment action may be found where a plaintiff is deprived of the ability "to expeditiously ascertain and enforce his rights under [a] collective bargaining agreement with his employer." *See* <u>Johnson v. Palma</u>, 931 F.2d 203 (2nd Cir. 1991) (*quoted and cited* in <u>Gaines v. N.Y. City Transit Auth.</u>, 353 Fed. Appx. 509, 511 (2nd Cir. 2009); <u>Nweke v. Prudential Ins. Co. of Am.</u>, 25 F.Supp.2d 203, 231 (S.D.N.Y. 1998)). Plaintiff sustained lost wages as a result of this adverse action.

Plaintiff also pleads sufficient facts to show a causal connection between the protected activity and the adverse employment decision. To start, as indicated above, under Title VII, and therefore under the NYSHRL and the NYCHRL, an entity may be found to have retaliated against an individual for that individual's protected activity even if the individual's protected activity was not against, or directed at that, entity. "Indeed, we have permitted a retaliation claim where the entity committing the retaliation was different from the entity about whose employment practices the plaintiff had complained, although we did not specifically analyze that issue, focusing instead on whether the plaintiff had established a causative link between the employee's actions and the employer's alleged retaliation." <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 284 (2nd Cir. 2001) (citations omitted) (vacating the judgment of the lower court that dismissed the Title VII and NYSHRL retaliation claims brought by plaintiff against an entity that was different from the entity against which the plaintiff had directed his protected activity). *See also*, <u>Johnson v. Palma</u>, 931 F.2d 203, 208 (2nd Cir. 1991); <u>Okoro v. Marriott Int'l</u>, 2008 U.S. Dist. LEXIS 76880 at *18 (ftn. 12) (S.D.N.Y. Sept. 29, 2008) (quoting <u>McMenemy</u>, 241 F.3d at 284); <u>Ghirardelli v. McAvey Sales & Serv.</u>, 287 F.Supp.2d 379, 387 (S.D.N.Y. 2003) (holding

that under Title VII, a current employer may be considered to have retaliated against an employee for that employee's Title VII activity against a former employer).

In Johnson v. Palma, the Second Circuit specifically held that a union could be found to have retaliated against an employee for that employee's complaints of discrimination against the employer of discrimination and vacated the lower court's judgment dismissing the Title VII claims against the union. The Second Circuit stated in that case:

> [S]imply because [the plaintiff] filed his original charge against [the employer] and not against the union does not break the causal connection between the employment action and the protected activity nor preclude a finding of retaliation on the part of the union...[T]he filing of a charge against only the employer initially does not negate retaliatory animus on the part of the union. The question becomes whether the union has retaliated against the employee for taking an action that is within his statutory rights.
> Johnson v. Palma, 931 F.2d 203, 208 (2nd Cir. 1991) [*quoted in* Gaines v. NYC Transit Auth., 528 F. Supp. 2d 135, 149 (E.D.N.Y. 2007); Martin v. Purolator Courier, 1996 U.S. Dist. LEXIS 22300 at *24 (E.D.N.Y. July 30, 1996).]

In addition, the language of the NYSHRL and the NYCHRL does not limit the retaliator to the entity against which the employee complained and engaged in his/her protected activity. Labor organizations are one of the types of entities covered by the NYSHRL and the NYCHRL. *See* N.Y.S. Exec. Law, Article 15, Sec. 296 (1)(c), 1-a, 3(a), 19(a); N.Y.C. Admin Code, § 8-101 (3), 8-107(1)(c)(d), (2), 8-120(a)(3). Section 296(7) of the NYSHRL states, "It shall be an unlawful discriminatory practice for any person engaged in *any* activity to which this section applies to retaliate or discriminate against *any* person because he or she has opposed *any* practices forbidden under this article or because he or she has filed a complaint, testified or assisted in *any* proceeding under this article." (emphasis added). Section 8-107(7) of the NYCHRL contains similar language. In McMenemy, 241 F.3d at 283, the Second Circuit stated that the plain language of Title VII did not support limiting protected activity to opposition to the unlawful employment practices of the same employer that engaged in the retaliation as it

"prohibits discrimination by an employer against an employee who 'has opposed *any* practice made an unlawful employment practice' by Title VII or who has 'participated in any manner in an investigation, proceeding, or hearing' under Title VII." McMenemy, 241 F.3d at 283 (quoting 42 U.S.C. § 2000e-3(a) and adding emphasis). The Court then went on to state that "the New York Human Rights Law contains similar language prohibiting discrimination 'against any person because he or she has opposed *any* practices [*sic*] forbidden under this article or be-cause he or she has filed a complaint, testified or assisted in *any* proceeding under this article.'" McMenemy, 241 F.3d at 283 (quoting 42 U.S.C. N.Y. Exec. Law § 296(1)(e) and adding emphasis).

Therefore, under prevailing case law, it is certainly plausible that Defendant UFT retaliated against Plaintiff for her protected activity against Defendant UCP.

Defendant UFT displayed a retaliatory motive by acquiescing in, supporting, and facilitating Defendant UCP's retaliatory actions of adversely transferring Plaintiff out of the Landings site and then attempting to effectuate another adverse transfer. A union's acquiescence in the retaliatory actions of an employer is demonstrative of a retaliatory motive. See their motive to retaliate against Plaintiff through their outright hostility toward Plaintiff as she was prosecuting her lawsuit against Defendant UCP and through it overtly siding with, supporting, propounding, advocating for, and trying to facilitate additional retaliatory actions by Defendant UCP against Plaintiff, namely an adverse transfer out of the Landings, when the union was supposed to be protecting, defending, and advocating for Plaintiff. They demonstrated outright hostility toward Plaintiff. The union's acquiescence in such a retaliatory action by Defendant UCP is enough to establish a retaliatory motive. *See* Johnson v. Palma, 931 F.2d 203, 208-209 (2nd Cir. 1991) (cited for this proposition in McMenemy, 241 F.3d at 285). In addition, the

union displayed hostility toward Plaintiff during the grievance process while siding with, supporting, and accommodating Defendant UCP to Plaintiff's detriment.

The causal connection between Plaintiff's protected activity and the adverse actions by Defendant UCP is also supported by the fact that the union treated Plaintiff disparately from, and less favorably than, other union members who were not pursuing discrimination/retaliation lawsuits against Defendant UCP. Plaintiff asserts in the SAC that the union actively undermined her interests at the November 16, 2011 meeting as well as the April 2012 Step One meeting and that the union did not do this to other union members. *See* SAC, ¶¶ 17, 21. Further, Defendant UFT indicated an unwillingness to file a grievance for Plaintiff for a significant period of time, and then when they did file a grievance the union did not prosecute it effectively, despite having filed grievances for other union members on issues that were less grave and serious and that had less of an impact on those members. *See* SAC, ¶ 14.

Furthermore, the causal connection is supported by the fact that the union began engaging in the adverse actions of sabotaging Plaintiff's interests and undermining Plaintiff's efforts to seek a correction of Defendant UCP's CBA less than a month after Plaintiff engaged in the protected activity of appearing at the Initial Conference in the Southern District of New York case and discovery began. The union continued its adverse actions as Plaintiff was conducting discovery in that case and otherwise prosecuting the case, including briefing a motion to amend the complaint that added claims and joined Everett Watts and other UCP supervisors as defendants.

## CONCLUSION

Based on the above facts and arguments, Defendant UFT's motion to dismiss should be denied in its entirety.

Dated: Brooklyn, New York
       March 8, 2013

                                        By:      /s/ /b/ Kathy A. Polias, Esq.
                                                 Kathy A. Polias (KP-9025)
                                                 Attorney-at-Law
                                                 155 Water Street
                                                 Brooklyn, NY 11201
                                                 Tel. No.:  718-514-2062